Radcliff, J.
. Here was no lien on the part of the plaintiff-; the delivery was complete to Green, the agent of Dixon, Williams & Co. and the property was thereby fully changed. A part of it was converted into wine, the subject over which the lien contended for could only be exercised, and the residue was otherwise disposed of.
Green, as the friend of the plaintiff, stipulated with Raddon, that he should not part with the wine, till the sum of 150QZ. was first paid or secured to the plaintiff. For that purpose, Raddon executed a bond or covenantto the plaintiff. Raddon was at this timé the agent of Dixon, Williams & Co. arid the person to whom C. Baring also had entrusted the care of his interests. Whether Raddon had authority from his principals to mate the stipulation above mentioned or not, is perhaps immaterial. That was a question between him and them only, and could not affect the plaintiff. By making the stipulation, and receiving the wines as he did, a trust was created for the benefit of the plaintiff, which the plaintiff had a right to affirm, and avail himself of. . This trust was transferred to the defendant, who became equally responsible with Raddon, by receiving the wines on the samé terms. That he so considered himself is evident, since he wrote to the plaintiff to that effect, and informed him that his brother, by the tenor of the bond was to see him paid, and afterwards, that he always supposed his brother had paid him. The brother acted only by authority from the defendant, and as his sub-agent. The first of those letters imports a promise, and if it did not, there was an implied assumpsit in law, the fund being in the defendant’s hands, and received by him, for the benefit of the plaintiff, as to 1500Z. of the first proceeds. The plaintiff affirmed the trust, relied upon this source of payment, and was thereby lulled into security, and probably prevented from taking a different remedy^ It appears, too, that the defendant received the approbation of Dixon, Williams & Co. for the *paymerit of this [*209] sum to the plaintiff, and I think he was completely *252 authorized so to do. ■ From the facts in the case, it may also be inferred that the assignment to Baring was secret and fraudulent, but it is unnecessary to resort to that ground, for I adopt it as a maxim, that when a trust is created in any manner, even without the knowledge of the cestui que trust, he may affirm it and enforce the trust.(a)
I am, therefore of ppinion that the plaintiff is entitled to judgment.
Kent, J.
The leading facts on which 1 form my opinion are these ; the plaintiff sold goods to Dixon, Williams & Go. to the amount of his present demand and more. Green -& Raddon, as agents of Dixon, Williams & Co. agreed, and took measures together, to secure the plaintiff his demand out of the proceeds of wine in their possession, as agents, and Raddon, in pursuance of their mutual agreement, delivered the same to the defendant, who was also an agent of Dixon, Williams & Go. on condition that the plaintiff should be paid out of the first proceeds.
The defendant, it is to be inferred from the case, accepted of the wines so delivered, upon the condition annexed, and the acceptance upon that condition, received the approbation of Dixon, Williams & Co.. The defendant having thus received the wines upon that condition, and with the sanction of his principal, became bound in good faith to perform that condition, and to pay the plaintiff out of the proceeds. And *253 what does he accordingly do ? He writes to the plaintiff, and acknowledges the receipt of the wines, and that the condition on which Raddon had undertaken to deliver the wines to him, had received the approbation of' his principal in England, and says that his brother in Philadelphia was to pay the plaintiff out of the first proceeds. The defendant’s brother in Philadelphia, to whom the plaintiff was referred by the letter of the defendant, afterwards writes to the plaintiff that he need not fear, for that he and his brother would detain the money for him.
*From these facts, the law will infer a promise by [*2T0] the defendant to pay-the money, because in justice and good faith he was bound to do so, and gave the plaintiff reason to expect it. On the receipt of the proceeds, he ought instantly to have charged his principal with the payment of the money to his order, and to have credited the plaintiff with it.(a)
*254 All that was done, for aught that appears to the contrary, was without any knowledge of the claim of Baring, and being done by the defendant with the funds in his hands, and without notice of such claim, theft of the plaintiff became the paramount claim-
, But Bad don was thé agent of Baring also, and if he really acted with candor and good faith, then all this was done with the concurrence of Baring, and the approbation that Báddon sought for and received in England, must have proceeded from Baring. If the assignment to Baring was in construction of law to be adjudged fraudulent,- and many circumstances in the case will lead to such a conclusion, then his.claim is wholly without foundation, in reference to the other creditors of Dixon, Williams .& Go. If the assignment be admitted as valid, yet as the property specified in it did not pass by actual delivery, then, of two innocent creditors who are struggling de damno evitando, he who obtains the first pos^ session, or what is equivalent to it, the first promise from the party having possession of the subject, ought, perhaps, to be preferred. (See Pothier, Obliga, n. 73.)
I am, therefore, of opinion that the plaintiff ought to have judgment. '
Lansing, Ch. J. was of the same opinion-
Lewis, J- It was contended for the plaintiff that the- delivery of the goods by him to Green, on account of Dixon, Williams Co. was qualified, with a condition that his debt *255 should be first paid out of the proceeds at Madeira; that his right to stop the goods in transitu, gave him the right to require such a stipulation ; that Green was, therefore his agent as well as the agent of Dixon, Williams & Co. *that Green’s stipulation with Raddon, therefore, [*211] gave the plaintiff a lien on the wines shipped to the defendant, and that the disclosure of the fact to him made it obligatory upon him to secure payment to the plaintiff.
If this were really the language of the transaction, I should have little doubt of the plaintiff’s right to recover. But it appears to me to be very different. The case states, that the contract for the goods was made between the plaintiff and Dixon, (in behalf of Dixon, Williams & Co.,) and that the latter being obliged to leave New York, Green was left by him as his agent, to receive and ship the goods to Madeira. Green, in his affidavit, does not state any condition annexed to the delivery of the goods by the plaintiff; but merely a request of the plaintiff, (though when it was made does not appear,) that he would secure to him part of a debt due to him from Dixon, Williams & Co., and that in consequence of such request, and to secure to him part of the debt, he took from Raddon the instrument mentioned. The contract, then, between the plaintiff and Dixon, Williams <fc Co., was completely executed by the Unqualified delivery, of the goods to Green. This vested the property in the vendees; they became actually possessed of them ; they were not ambulatory, and of course, a right to stop in transitu did not exist. Such is the doctrine laid down in the case of Lickbarrow v. Mason, (2 T. R. 63.)
Green further states, that he sailed with the goods some time in March, 1701, to the island of Maderia, where they were sold, and the proceeds invested in wines, which, together with other wines he, as agent for Dixon, Williams <fc Co., shipped in a vessel commanded by Raddon, to the defendant in the island of Jamaica. On the 4th June, 1791, Dixon, Williams & Co., assigned to Barings & Co., all their wines, goods, wares and merchandizes in the island of Madeira, and the proceeds thereof. Barings & Co. sent Raddon *256 out, with instructions to receive the wines, and to transport them to Jamaica or Philadelphia, for the account of Charles Baring. Raddon was also appointed an agent for [*212] Dixon, Williams •& Co., but it does not *appéar to have been with the knowledge of Barings & Co, He arrived at Madeira, and there received the wines under the stipulations contained in the instrument already mentioned, and proceeded with- thein to . Jamaica, where, he delivered sixty pipes to the defendant, showing him a copy of the paper, and contenting himself with a promise from the defendant that he would hold the wines until accounts were received from England, that Raddon’s .conduct in signing the said paper Was approved of; which account's he received in October. Raddon- proceeded with the residue of- the wines, amounting to 137§ pipes, to Philadelphia, where he delivered them to Peter Blight, the brother óf the-defendant.
It was observed by one of the counsel for the plaintiff, that the outward cargo Was in the hands of 'Green till the 11th July; that the wines were purchased out of the proceeds, at a period subsequent to the assignment to Barings & Co., and, therefore, not affected by if. But the assignment is not confined to the wines ; its terms are sufficiently general to embrace every species of merchandize which the assignors had at the time in the island of Madeira. And with' respect to the outward cargo being there at the time of the assignment, the court must, like jurors, be determined by the probability.
From March until June, then, there was time amply sufficient for a voyage from New York to Madeira. But were the fact' otherwise, I should doubt whether the plaintiff’s right to recover, in this form of action, was strengthened by weakening the title of Barings & Co.
The conduct of both Green and Raddon appears to me censurable, because it is calculated to defraud Barings & Co. How far Raddon may have been liable on his stipula-. tion is immaterial. He certainly broke his engagement, in-' asmuch as he exacted no promise from the defendant to pay *257 the plaintiff out of the- proceeds of the wine. The promise to retain them until Raddon’s conduct should be approved of in England, does not amount to an assumption to pay. Nor is the approbation he acknowledges to have received, *in my opinion, to be intended an approbation from [*213] Barings & Co., for in all probability, from the conduct of Raddon, the defendant was ignorant of their interest in the wines. Being an agent for Dixon, Williams & Co., he wanted their approbation of the preference which would be thereby given to this appropriation. Had he received that of Barings & Co., he could not have hesitated in making the stipulated payment. But on the contrary, previous, perhaps, to a sale of the wines, he received orders from his principals, to hold them subject to the orders of Charles Baring.
From all the facts disclosed by the case, I can discover no principle on which the plaintiff can be entitled to recover. He had no lien on the property, nor is there any assumption on the part of the defendant, on which this action can be supported.
My opinion, therefore, is that the postea ought to be delivered to the' defendant.
Benson, J. having formerly been concerned as counsel in the cause, gave no opinion.
Judgment for the plaintiff.

 The obligation of the trustee is, that he shall manage the subject matter of the trust in the same manner that a discreet man would manage his own concerns, and he is accountable if he neglects to perform this duty. Rainsford v. Rainsford, 1 Rice’s Eq. 343. It is, therefore, incumbent upon him to ascertain before he parts with it, who are the parties legally entitled "to it; for, if through any misapprehension on the part of the trustee, the trust property find its way into a .channel not authorized by the terms of the trust he will be held personally responsible for the misapplication to the parties who can establish a better claim. “ I have no doubt,” said Lord Redesdale upon one occasion, “ the executors meant to act fairly and honestly, hut they were misadvised, and the court must proceed not upon the improper advice under which an executor may have acted, but upon the acts he has done. If under the best advice he could procure he acts wrong, it is his misfortune, but public policy requires that he should be the .person to suffer.”- Doyle v. Blake, 2 Sch & Let. 243. See also Robb v. Thompson, 1 A. K. Marsh. 514.

 The defendant in the principal case having accepted the goods subject to the contract of Raddon, which was afterwards approved by his principal, he became liable for their proceeds in assumpsit, for money had and received, for, though in order to maintain this action, a privity must exist between the plaintiff and defer!dant; 1 Chit. PI. 5th Am. ed. 304 ; 1 Steph. N. P. 333, 335. Baron v. Husband, 4 B. & Adol. 611; and per Parke, J. 612. Rapelje et al. v. Emory, 2 Dall. 54. Wedlake v. Hurley, 1 C. & J. 83. Stephens v. Badcock, 3 B. & Adol. 354. Vide etiam, Edden v. Reade, 3 Campb. 339. Rogers v. Kelly, 2 id. 123. Howell v. Batt, 5 B. & Adol. 504; 2 N. & M. 381. Maxwell v. Swindle, 1 Brevard, 467. Sims v. Britain, 4 B. & Adol. 375. (See however, Mason v. Waite, 17 Mass. R. 563. Hall v. Marston, id. 579. Eagle Bank v. Smith, 5 Conn. R. 71. Dickson v. Cunningham, Mart. & Yerg. 221; where the doctrine is maintained, that there need be no privity of contract between the parties, except that which results from one man’s having another’s money, which he has not a right conscientiously to retain;) yet such a privity might be inferred from á consent to hold the proceeds for the benefit of the plaintiff. Friihling v. Schroeder, 2 Bing. N. C. 77; 7 C. & P. 103.
In the statement of facts no evidence appears that any money had come to the hands of the defendant, and this action, in general, lies only where such is the case; 1 Chit. PI. ubi.supra., and references. Beardsley v. Root, 11 Johns. R. 464. Lucket v. Bohannon, 3 Bibb. 378. Madison v. Wallace, 7 J. J. Marsh. 100. Johnson v. Haggin, 6 id. 581; 3 id. 6; 1 id, 544. Ralston v. Bell, 2 Dall. 242. Hantz v. Sealy, 6 Binn. 409. This, however, is 'nferrible from the opinion of Kent, J., and, moreover, positive evidence is not *254 necessary, that the defendant has received, money belonging' to the plaintiff; but, where from the facts proved that is a fair presumption, the . action is maintainable, Tuttle v. Mayo, 7 Johns. R. 132 ; 1 Chit. Pi. ut supra, and references. Witherup v. Hill, 9 Serg. & Rawle, 11, And in some cases property has been regarded as money, for the purposes of this action: Thus,' bank notes, and' any other property received as money. Mason v. Waite, 17 Mass. R. 560. Ainslie v. Wilsons 7 Cowen, 662. Arms v. Ashley, 4 Pick. 74. (But see Filgo v. Penny, 2 Murph. 182, where one, by mistake had paid to another a $50 bank note, instead of a $5 note, it was held that he could not maintain this action to recover, back $45, because a bank note is not money?) See also Thompson v. Babcock, Brayt. 24. And negotiable notes, Floyd v. Day, 3 Mass. R. 405; Hemmenway v. Bradford, 14 id. 122; Willie v. Green, 2 N. H. R. 333; Clark v. Penney, 6 Cowen: 297, have been held to support this action.