## Case No. 16,414.

### UNITED STATES v. STURGES et al.

[1 Paine, 525.] [1]

Circuit Court, D. New York. April Term, 1826.

MORTGAGES — TRUSTS — CREDITOR'S BILL — ASSIGNMENTS OF MORTGAGES — NOTICE OF EQUITIES — PLEADING — WAIVER OF DEFECTS — DISCHARGE OF IMPRISONED DEBTOR — RELEASE OF SURETIES.

1. Where a mortgage is given by a debtor to his co-debtor to secure the latter against the debt of their creditor, equity considers the mortgagee as a trustee for the creditor, and where a judgment has been recovered, will apply the mortgaged property in satisfaction of the judgment, or remove the encumbrance, so that it may be subjected to execution.

[Cited in Warner v. Helm, 1 Gilman, 231.]

2. The principle which governs such cases is, that the collateral security is a trust created for the protection of the debt, and that it is the duty of a court of equity to see that it fulfils the purpose for which it was intended.

3. A judgment creditor who applies to a court of equity for its aid to enforce a judgment at law, if he asks its aid to reach a chattel, must show that he has taken out execution at law, and pursued it to every available extent, in order to show a lien upon the chattel; but if the aid is sought as to land, it is enough to show a judgment creating a lien upon the land.

4. Although a mortgage be absolute upon the face of it, a court of equity will inquire into the real purpose for which it was given, and apply it to that use.

5. It is a rule of equity that a judgment creditor at law is entitled to redeem an encumbrance upon land, and thereby secure his legal priority.

6. The assignee of a mortgage or other chose in action, takes it subject to the same equity that it was subject to in the hands of the assignor.

[Cited in Upham v. Brooks, Case No. 16,797; Corbett v. Woodward, Case No. 3,223.]

7. And the rule that it is only an equity residing in the original debtor, and not the equities of third persons, against the assignor that have this effect, does not exclude a judgment creditor, claiming to redeem: He stands in the place of the debtor, and has his equity.

8. An assignee who might have obtained notice, and ought to have sought it, stands in no better situation than if he had actually obtained it.

[Cited in Re Hook, Case No. 6,672.]

[Cited in brief in Digby v. Jones, 67 Mo. 105.]

9. A mortgage was given in reality to indemnify the mortgagee, but purporting to secure a sum of money payable in one year, and five years afterwards it was assigned, the whole sum appearing from the instrument to be unpaid. *Held,* that the circumstances of the case should have put the assignee upon an inquiry, from which he would have learnt the true consideration of the mortgage.

10. An objection to the equity of the bill, which might have been taken advantage of on demurrer, is not favourably received at the hearing of the cause after answer.

11. A discharge from imprisonment by the secretary of the treasury, of a debtor to the United States, under the act of 1798, does not discharge his co-obligors and sureties in the bond from their liability.

In equity.

R. Tillotson, for complainants.

H. Wheaton and E. Paine, for defendants Burroughs and Sturges.

E. Slosson, for defendant Butler.

THOMPSON, Circuit Justice. By the bill and answers in this cause it appears, that on the 9th of October, 1815, the defendants, Butler and Sturges, became security for Minturn and Champlin, in a bond for the payment of duties, to a large amount; that the bond not being paid at the time stipulated, separate suits were prosecuted against the principals and sureties, and separate judgments obtained, in December, 1816; that payments had been made from time to time upon the judgments, leaving, however, a large balance still due; that after the execution of the bond, and before the judgments were obtained thereon, viz. on the 12th of August, 1816, Butler and his wife executed a mortgage on certain property in the city of New-York, to Josiah Sturges, for the payment of twenty-seven thousand dollars. The mortgage was duly registered on the 16th of August, 1816. The mortgage upon its face purports to be an absolute mortgage to secure the payment of twenty-seven thousand dollars. The bill alleges, that it was in fact given to indemnify Sturges against the bond he had executed as surety for Minturn and Champlin, and for no other purpose; that Sturges had paid no monies on the bond, or towards the judgment recovered against him upon it, and that none had been realized from his property; that the mortgage remained uncancelled of record; and that by reason thereof, the house and lots so mortgaged could not be sold, under the judgment ob-

1 [Reported by Elijah Paine, Jr., Esq.]

tained by the United States against Butler, as no person would bid for the same, so long as the property remains covered by the mortgage. And the bill seeks to have the mortgage cancelled and discharged of record, or the benefit thereof applied to the use of the United States, or such other relief as shall seem fit and proper.

The original bill was filed against Butler and Sturges only. and they answer separately. Butler admits the execution of the mortgage, as stated in the bill; that he never received any consideration for it from Sturges; alleges, that the bond referred to in the mortgage was never delivered to Sturges, and denies that the mortgage was given for the purpose of securing Sturges; but alleges, that it was executed and recorded, and retained by him for upwards of two years, solely with the view of raising money upon it to pay off the judgments against him on the Minturn and Champlin bond; denies that at the time of executing the mortgage, or at any time since, he was indebted to Sturges. And he sets up, in discharge of his liability on the judgment in favour of the United States, that in the fall of the year 1819, Minturn and Champlin, the principals, were committed to prison on a capias ad satisfaciendum, and were afterwards discharged from imprisonment by the secretary of the treasury, without his consent.

Sturges, in his answer, admits the execution of the mortgage, but denies that it was given to secure him against the Minturn and Champlin debt exclusively, but that it was also intended to secure him for all monies owing to him by Butler, and for all other liabilities incurred by him for Butler, as well as for monies he might be compelled to pay on account of said bond; and alleges, that Butler was indebted to him in a large sum of money, and that he had become responsible for him, endorser of promissory notes, and acceptor of bills of exchange to a large amount; and also alleges, that he had been damnified by reason of his becoming security for Minturn and Champlin, and that his property had been sold and sacrificed under the judgment obtained against him; and also insists on the discharge of Minturn and Champlin by the secretary of the treasury, as in Butler's answer set forth. Sturges also sets up, that being indebted to Oliver Sturges and Benjamin Burroughs in the sum of fifteen thousand dollars, he on the 9th of October, in the year 1821, assigned the said mortgage to them in full and complete satisfaction of said debt, and was thereupon released and discharged by them from the said debt.

In consequence of the disclosure in the answer of Sturges, that the mortgage had been assigned to Sturges and Burroughs, a supplemental bill was filed against Burroughs, the surviving partner, calling upon him to answer the allegations in the bill, and set forth his knowledge in relation to the assignment, &c., and praying that said assignment might be delivered up to be cancelled, or such release executed by Burroughs, as survivor of Sturges and Burroughs, as might be deemed proper and necessary, to enable the United States to enforce their judgment against the mortgaged premises.

Burroughs, in his answer, alleges, that on the 9th of October, 1821, Josiah Sturges was indebted to Sturges and Burroughs in the sum of eighteen thousand eight hundred and sixty-six dollars; that the assignment of the mortgage was made in satisfaction of fifteen thousand dollars, part of the said sum so due from him; that the mortgage has not been transferred by him to any other person; that no part of the interest on the fifteen thousand dollars has been paid; and that the fifteen thousand dollars is now due and unpaid, except so far as it has been paid by the assignment of the mortgage, and that he has no security except the said assignment; and denies any knowledge of the suits of the United States on the Minturn and Champlin bond, or of the judgments, or that the mortgage was executed to indemnify Josiah Sturges against said debt, or that Josiah Sturges was indebted to the United States; and avers that the assignment of the mortgage was executed bona' fide by Josiah Sturges, · to secure the debt of Sturges and Burroughs, and for no other purpose.

I have been thus particular in noticing the material allegations in the bill, and the admissions in the several answers, because it is upon these alone that whatever relief is given, must be founded so far as the rights of Butler or Sturges are concerned. No testimony has been taken in the cause that can vary such a result. Butler, one of the defendants, is the only witness examined on the part of the plaintiffs. The reading of his examination has been objected to on the ground of interest. The validity of this objection will be hereafter noticed, when I come to consider the cause as it relates to the rights of Burroughs. It is there alone it can be of any importance; for it is unavailing, so far as it contradicts the answer of Sturges. It is but the testimony of one witness, which will not outweigh the answer, asserting a fact responsive to the bill, there being no corroborating circumstances to take the case out of the general rule on this subject. The rights and interests of the several defendants being somewhat at variance with each other, it becomes necessary to consider the case as it stands between the United States and each one separately. The effect and operation of the discharge of Minturn and Champlin from imprisonment by the secretary of the treasury, is a branch of the defence set up, both by Butler and Sturges, and will be afterwards considered.

In the first place then, as it respects Butler, he admits that he never received any consideration for the mortgage. That although it was duly executed and registered, it was re-tained by him, and was given solely with the view of enabling him to raise money upon it, to pay off the judgment of the United States against him upon the Minturn and Champlin bond. If no consideration was given by Sturges for the mortgage, it is either a mere nominal or a fraudulent encumbrance. and upon either ground cannot be upheld as any impediment to the obtaining satisfaction of the judgment of the United States. And if it was a bona fide transaction, intended for the purposes set out in Butler's answer, the United States were beneficially interested in the use to which it was to be applied. It was to raise money to satisfy their judgment; and Sturges, in this view of the case, would become the trustee of the judgment creditor. And although the mortgage is absolute upon the face of it, a court of equity may inquire into the real purpose for which it was given, and apply it to that use. Moses v. Murgatroyd, 1 Johns. Ch. 119, 473. The allegation in the bill is, that the mortgage was given by Butler to indemnify Sturges, his co-surety, against the bond entered into for Minturn and Champlin. Although the admission in Butler's answer does not support this allegation in terms, yet it is such as to warrant the granting of the relief prayed for, either to have the mortgage delivered up and cancelled of record, or that the mortgaged premises may be sold, and the proceeds applied towards payment of the judgment of the United States; and such application of the proceeds would operate by way of indemnity to Sturges. And besides, there is a general prayer for relief, under which any relief may be granted, which the proofs or admissions will warrant.

It is objected, however, that there is a want of equity apparent on the face of the bill in two particulars: 1. It seeks the aid of a court of equity against sureties, without showing that the United States have attempted to collect the debt of the principals, or alleging that they are insolvent. 2. The bill is filed to obtain the aid of a court of equity to enforce a judgment of a court of law, without showing that the United States have exhausted their legal remedy.

There are several answers to be given to these objections. If, admitting the charges or facts stated in the bill to be true, there is no foundation in equity for the relief prayed; it was a proper case for a demurrer, and the objection comes now with less weight than it would at an earlier stage of the proceedings. But admitting the first branch of the objection to be well founded in principle, it is waived, and the omission supplied by the answer, which shows, that the United States have attempted to collect the debt of the principals, Minturn and Champlin; that a judgment had been recovered against them, and

execution issued, upon which they were imprisoned and discharged by the secretary of the treasury, under the act of congress of the 6th of June, 1798 (3 Bior. & D. Laws, 54 [1 Stat. 562]), which could not have been done until it had been ascertained that they were insolvent, and unable to pay the debt. And it is to be presumed, that all the examination required by the act to be made by the secretary of the treasury, was·made before he discharged them from imprisonment. At all events it does not lie in the mouth of the defendants, who set up this discharge as a part of their defence, to say it was not given pursuant to the requirements of the act of congress.

The second branch of the objection is not supported by authority to the extent in which it is laid down. The rule seems to be, that if a judgment creditor wants relief in equity as to a chattel, he must show that he has taken out execution at law, and pursued it to every available extent, before he can resort to a court of equity for relief. This is necessary in order to show a lien upon the chattel. If the aid is sought as to real estate, it is enough to show a judgment, creating a lien upon the land. And this the bill does show. 4 Johns. Ch. 676. The objection, therefore, that there is a want of equity apparent on the face of the bill, cannot be sustained. As against Butler then, there can be no reason why the relief prayed should not be granted. If the mortgage was given without consideration, and merely as he alleges, to enable him to raise money to pay off the judgment; he and the United States were the only parties who had any interest in it, and there is no principle on which it can be upheld as a valid outstanding encumbrance.

2. The next inquiry is, how stands the case as it relates to Sturges? He sets out many matters as between him and Butler, not called for by the bill, and which can avail nothing, either against the United States, or against Butler. His rights in the present case, must be determined from his admissions, which are responsive to the bill. He admits the execution of the bond, and the recovery of the judgments as alleged in the bill, and also the execution of the mortgage; but denies it was given solely for the purpose of indemnifying him against the bond as one of the sureties of Minturn and Champlin, but was given as much to secure him for monies owing him by Butler, and against all other liabilities incurred by him on Butler's account, as against the Minturn and Champlin bond. He denies the allegations in the bill, that he had paid no money on account of the bond, or that none had been realized out of his property; but alleges, that his property had been sold at a sacrifice under the judgment against him, and great damage thereby sustained by him. The admissions then of Sturges, show that the mortgage was not given to secure the payment of twenty-seven thousand dollars as it purports upon its face, but that it was

given as collateral security, and to indemnify Sturges against responsibilities he was under for Butler, including the Minturn and Champlin debt. Had the admission of Sturges been that the mortgage was given solely for the purpose of indemnifying him against this debt, there can be no doubt but that it would have been within the proper province of a court of chancery, either to remove the encumbrance, or apply it towards payment of the debt for which it was intended as collateral security. The principle which governs such cases is, that the collateral securities are trusts created for the better protection of the debt, and that it is the duty of the court to see that they fulfil the purpose for which they were intended. 1 Eq. Cas. Abr. 93; 1 Johns. Cas. 205; 2 Johns. Ch. 296. But the admission of Sturges in the present case, shows that this mortgage was given as security for whatever debt there was due from Butler to him, and as an indemnity against the Minturn and Champlin debt, and all other responsibilities he had come under for Butler. If the United States ask for a decree upon this admission, without any other proof, it must all be taken together, so far as it is responsive to the bill; and it would be inequitable to take from Sturges this indemnity, without inquiry into the state of these accounts, and the responsibilities he is under for Butler; and the only course, therefore, that can be adopted, as between the United States and Sturges, is to refer the subject to a master, to make the proper inquiries. If it was a mortgage for the payment of money absolutely, all that the United States could claim, would be to redeem the mortgage. And in the present case, all the legal purposes for which the mortgage was given must be fulfilled, before it can be removed out of the way of the judgment of the United States.

3. The next inquiry is, as to the rights of Burroughs, who is an assignee of the mortgage, without notice of the special purposes for which it was given. He took the assignment in payment and satisfaction of a debt of fifteen thousand dollars, due from Sturges to him; and the question is, whether he stands in any better situation, or has acquired any greater rights under the mortgage than Sturges himself possessed. The mortgage is only a pledge or security for the payment of a sum of money; it does not purport upon its face to be an absolute and unconditional conveyance of the land. It is subject to redemption by the mortgagor; and those claiming under him acquire all his rights in that respect; and the assignee of the mortgage stands in the place of the mortgagee, and can claim no greater rights under the mortgage than he could. It is a general and well settled principle, that the assignee of a chose in action takes it subject to the same equity it was subject to in the hands of the assignor. This was the doctrine laid down in the case of Tur-

ton v. Benson, 1 P. Wms. 496, and in numerous other cases in the English courts. 1 Vern. 691, 764; 1 Ves. Sr. 123; 4 Ves. 121. The same principle was fully adopted and sanctioned by the court of appeals in state of Virginia, in the case of Norton v. Rose, 2 Wash. (Va.) 233, and by the court of chancery in this state in the case of Murray v. Lylburn, 2 Johns. Ch. 443. The qualification of the rule as laid down by the chancellor in the latter case, does not affect the question now before the court. The rule he says is generally understood to mean the equity residing in the original obligor and debtor, and not an equity residing in some third person against the assignor. All the United States claim here, is the equity residing in Butler, the original debtor and mortgagor. They ask only to be placed in his shoes, and to redeem the mortgage, or have it stand only as an encumbrance to the same extent that it would have stood against him. It is a rule of equity, that a judgment creditor at law is entitled to redeem an encumbrance upon real estate, and thereby secure his legal priority. 4 Johns. Ch. 692.

Although Burroughs is an assignee without notice of the equity now claimed, he is chargeable with negligence in not seeking for information. By proper inquiries from Sturges, he could have ascertained the nature and extent of his interest in the mortgage. An assignee cannot found an equity on his own negligence. If he might have had notice, and ought to have sought it, he stands in no better situation than if he had actually obtained it. And there are circumstances in this case that ought to have excited his diligence, and put him on inquiry. The mortgage is dated the 12th of August, 1816, and the twenty-seven thousand dollars which it purports to secure, is made payable on the 12th of February thereafter; and the mortgage was not assigned to Burroughs until October, 1821. The cause of the delay, and whether any, and what payments had been made, were very natural inquiries for him to have made, and it is hardly presumable, that he did not make them; and if he did, it is most likely he was fully informed as to the situation of the mortgage; and if he did not, it was a negligence which is entitled to no favourable consideration in a court of equity. Had the mortgage been really given to secure the payment of twenty-seven thousand dollars as it purports, and the whole, or any part of it had been paid before the assignment; it could not be pretended that the assignee, although ignorant thereof, could again enforce payment; and still such a claim would be sustained with the same equity as is set up in the present case. Burroughs in his answer does not deny the allegations in the bill, as to the purposes for which the mortgage was given; he only alleges his ignorance thereof. It requires, therefore, but one

witness in support of these allegations; and as Butler is the only witness who has been examined for that purpose, it becomes necessary to decide upon his competency. He is not objected to because a party in the cause: one defendant may be examined in equity for the plaintiff, or for his co-defendants if he has no interest in the event (1 Phil. Ev. 6; 2 Johns. Ch. 530; 3 Atk. 401); though ordinarily this cannot be done at law. In whatever point of light Butler is considered as standing, he does not appear to me to have such an interest as to exclude his testimony. If the mortgage is to be considered as given without consideration, and for the purposes alleged by Butler, he is interested to uphold it; as he would thereby protect his own property against the judgment of the United States; and in this view of the case, his interest is against the party calling him. If the mortgage is considered as a real security for the twenty-seven thousand dollars, Butler stands indifferent between the parties. His property is at all events swept away, either by the judgment or the mortgage; and it is immaterial to him under which it is taken; and so far as respects his liability to costs, his interest is against the complainants, and to defeat the suit. Burroughs must, therefore, under the allegations in the bill supported by the testimony of Butler, be considered as standing in the place of Sturges; and the extent of his interest as assignee of the mortgage, must depend on the result of the reference to a master, in relation to the matters between Butler and Sturges.

4. The only remaining question is, as to the effect of the discharge of Minturn and Champlin from imprisonment by the secretary of the treasury, under the act of congress of the 6th of June, 1798. This act, although it authorizes the discharge of the party from imprisonment, expressly provides, that the judgment shall remain good and sufficient in law, and may be satisfied out of any estate, which may then or at any time afterwards belong to the debtor. The effect and operation of such a discharge upon the liability of the co-obligors in the bond, has received the direct decision of Mr. Justice Story, in the case of Hunt v. U. S. [Case No. 6,900]. The leading cases in the books on this subject are referred to, and it is fully and explicitly admitted, that the operation of the discharge at common law, would be to exonerate the co-obligors: But under the special provisions of the statute, such is held not to be the effect. It is there said that the sole ground upon which a co-obligor is discharged is, that the debt or judgment has been once satisfied; but that when the law has declared that a particular act shall not be deemed a satisfaction of the debt or judgment, it would seem to follow, that it could not be pleaded as a discharge of any party to such debt or judgment. I do not mean to enter into an examination of this point as an open question; nor would I be understood as intimating any doubt as to the correctness of the decision. But finding the point directly adjudicated in one of the courts of the United States of co-ordinate jurisdiction with this, I shall adopt it as governing the present case. It is of the highest importance that there should be a uniformity of decision in the construction of statutes: and I the more readily adopt the construction as laid down in the case of Hunt v. U. S.; because although in that case the question could not have been carried to the supreme court of the United States; yet in the present case, should there be any dissatisfaction with the decision, it may be reviewed by the supreme court, and a construction settled which will be obligatory upon all the other courts of the United States.

Upon the whole, therefore, the cause must be referred to a master, to take and state an account between Butler and Sturges; showing the balance, if any, due to Sturges. and also to inquire into and state the responsibilities he is under for Butler; and the testimony taken upon the reference must be certified to this court, to be used on the final hearing of this cause: and all matters of equity and further directions, are reserved until such hearing and the coming in of the report of the master.