JAMES GARVEY, Appellant, *v.* NATHANIEL JARVIS et al., Respondents.

One M. held a judgment against plaintiff for over $2,000. He proposed to plaintiff to discharge it for $500. This offer was not accepted. R., a stranger to plaintiff, by falsely representing that he was a friend of, and came from plaintiff, induced M. to assign the judgment to him for $500.— *Held*, that the only one injured by, or who could complain of the fraud, was M., and that plaintiff was not entitled to the benefit of the purchase. (RAPALLO and PECKHAM, JJ., dissenting.)

(Argued February 23d, 1871; decided November 10th, 1871.)

APPEAL from judgment of the General Term of the first judicial district, affirming judgment entered upon decision of court dismissing plaintiff's complaint.

The court found the following facts: That about the 1st day of November, 1861, the defendant, Malcolm, recovered a judgment against the plaintiff and one Peter Ziglio for $2,202.90, which he still owned in January, 1867, there having been a sum of $200, paid upon it by Garvey, in October 1866, the balance remaining unpaid.

That in January, 1867, Malcolm promised plaintiff, that he would satisfy and discharge said judgment against him for $500, but plaintiff did not then accept the offer.

That Malcolm, while still willing to discharge said judgment for that sum was, upon the false representation of defendant, Roach, that he came from and was a friend of

plaintiff, induced to and did assign the judgment to Roach upon the payment of $500.

Upon obtaining the assignment, Roach immediately took supplementary proceedings against plaintiff on the judgment, and obtained $1,200 from him by means thereof.

Upon discovering the fraud of Roach, Malcolm brought a suit to set aside the sale and assignment to him, which was compromised on the 11th of June, 1867, by an assignment of the judgment to Jarvis to collect it, and to pay to Malcolm $943, and to Roach $750, the balance due thereon, and said Jarvis still holds the judgment.

That plaintiff never paid the $500 to Malcolm, nor did he ever accept the said offer, or tender to Roach, the assignee of said judgment, the $500.

*Geo. C. Genet,* for appellant.    Payment of a less sum than amount of judgment, if received as such, is full satisfaction of judgment.    (*Traver* v. *Rankin,* 3 Kelly, Ga. R., 210; *Sewell* v. *Sparrow,* 16 Mass. R., 24; *Milliken* v. *Brown,* 1 Rawle, 391; 2 Parsons on Contracts, 130, note *b.*)    The law implies a discharge, when the creditor delivers up the evidence of his claim.    (Poth. on Obl. n., 608, 609; Bouvier's Law Dict. Title Release; *Licey* v. *Licey,* 7 Barr. Pa., 251; *Alberts* v. *Ziegler,* 29 Pa. R., 50; *Beach* v. *Endross,* 51 Barb., 570; *Ellsworth* v. *Fogg,* 35 Vt. R., 6 Shaw, 355.) Where trust is created without knowledge of *cestui que trust,* he may affirm and enforce trust.    (*Corse* v. *Leggett,* 25 Barb., 393; *Neilson* v. *Blight,* 1 John. Cases, 209; *Lawrence* v. *Fox,* 20 N. Y. R., 268; *Gridley* v *Gridley,* 24 N. Y. R., 130; *Lawrey* v. *Steward,* 25 N. Y., 239; 4 Kent's Com., 307.)    Roach having obtained conveyance by fraud, a court of equity makes him a trustee by implication.    (Trusts by Tiff. & Ball, title, Implied Trusts, chap. 2, p. 193; *Mulvaney* v. *Dillon,* 1 B. & B., 409; *Moore* v. *Moore,* 1 Seld., 256; *Reed* v. *Norris,* 2 My. & Craig, 361, 374; *Sweet* v. *Jacobs,* 6 Paige, 363; *Morey* v. *Herrick,* 18 Pa.; *Hoge* v. *Hoge,* 3 Watts, 213; *Gardner* v. *Ogden,* 22 N. Y., 327.)

CHURCH, Ch. J.· The judge before whom this action was tried found, as facts, that one Malcolm held a judgment against the plaintiff for upward of $2,000, and had told the plaintiff, that he would discharge it for $500, but the plaintiff had not accepted the offer; that the defendant (who was a stranger to the plaintiff), having learned of the willingness of Malcolm to discharge the judgment for that sum, applied to him, and by the false representation, that he came from and was a friend of the plaintiff, induced Malcolm to assign the judgment to him, for which he paid $500, and the plaintiff now claims the benefit of this purchase. ·

The plaintiff had no legal right to have the judgment satisfied or assigned for $500, or any other sum less than the amount of it.

There was no contract to that effect, and if there had been, it would have been invalid for want of consideration. It would have been an executory contract to discharge a debt for less than the face, which, it is well established, is not binding. Such a transaction is effectual only when fully executed as an accord and satisfaction. The plaintiff was not, therefore, legally injured. He was liable to pay the whole amount of the judgment before the assignment, and could not be compelled to pay any more after. He neither lost nor gained by the transaction, in any legal sense. We have been referred by the learned counsel for the plaintiff, to several well established legal and equitable principles, to uphold and sustain the plaintiff's claim, a brief reference to which becomes necessary, in order to ascertain whether any of them are applicable to the facts of this case.

It has been decided by this court that, if one person, for a good consideration, received from another, promises to pay another person a sum of money, the latter can maintain an action upon the contract, although he was not cognizant of it at the time. (*Lawrence* v. *Fox*, 20 N. Y., 272.)

In this case there was no contract, and no consideration to uphold one; and the action is not brought or sought to be maintained upon the theory of a contract, express or implied.

It is claimed however, that upon principles applicable to principal and agent, or trustee and *cestui que trust*, the plaintiff is entitled to maintain the action; that Roach having assumed to act as the agent of the plaintiff, the latter could ratify the act and entitle himself to the benefit of it; and that the defendant holds the judgment as trustee for the plaintiff, and must account to him for it. It is a familiar rule, that the ratification of an unauthorized act of an agent is equal to an original authority. (Dunlap's Paley's Agency, 171, note *a.*) But in this case the essential element is wanting, that the act must be done *for another.* Here it was not so done. The most that can be claimed is, that the defendant said he was acting for the plaintiff, which was false. He paid his own money, and in fact, acted for himself. He was a stranger to the plaintiff, and of course, under no obligation to act for him, and as we have seen, he deprived the plaintiff of nothing to which he was entitled. The cases on this subject, have generally arisen between the principal and the person with whom the agent acted, either to enable the former to derive some advantage or to enforce some liability against him; but in all these cases the agent acted for the principal, and the act was assumed by him, with the assent of the agent. It has been held, that where A does an act as agent for B, without any communication with C, the latter cannot afterward, by adopting it, make A his agent, and thereby incur any liability or take any benefit under the act of A. (*Wilson* v. *Tumman*, 6 Mann & Gran., 236.)

No authority has been cited, and I think it safe to assert that none exists, in which any court has ever held, that a false declaration of agency for another, enables the latter as against the alleged agent, to receive the benefit of an act actually performed for the latter, unless the act was performed under such circumstances as to create an estoppel, or unless the assumed principal has been deprived of some legal right, or otherwise injured. There is no *estoppel* in this case. The plaintiff neither did anything, nor omitted to do anything in

consequence of the statement of the defendant, and he was deprived of no legal right.

But it is urged by the plaintiff, that the defendant held the judgment as trustee for him; that Malcolm assigned it believing that it was for the plaintiff, that the defendant procured it by a fraud; and that in such cases a trust is raised *ex maleficio*, and the fraudulent recipient is turned into a trustee "to get at him." I have examined all the cases cited, and none of them makes the principle invoked applicable to the facts of this case.

It may be laid down, as a general rule, that this principle does not apply, unless the defendant occupies some fiduciary relation to the party making the claim, or that the former owed to the latter some duty or obligation with respect to the property. A stranger cannot claim the benefit of a purchase of property by another, merely because the latter falsely stated that he was acting for the former. It is undoubtedly true, that an officious intermeddler with the rights and property of another, will not be allowed to reap any advantage to himself in dealing with the property of another, but will be held to account in respect to it as a trustee. Such was the case of *Mulvany* v. *Dillon* (1 Ball & B., 409).

The defendant, by collusion with one executor, induced a co-executor who was in possession of a farm, held for the estate under a lease, by threats and intimidation, and by interfering to prevent the sub-tenants from paying the rent, to quit the farm and surrender the lease, and then took a lease of the same premises in his own name at a less rent. He also assumed to act for the devisees, who were infants, by renewing a lease of another farm in which he expressly declared the trust. It will be seen that here was an interference as trustee with the property of the estate. The *Lord Chancellor*, in delivering the opinion, states the question to be "whether *Sir William Dillon* had so far interfered in the management of the assets, as to charge him with a fiduciary character, and to preclude him from taking a benefit to himself in this trust property." He then proceeded to state the

facts, and held that his procuring the surrender of the old lease, and procuring the new one, was but a more circuitous mode of purchasing; and then held, that he occupied such a position, that he could not purchase for himself, and said, "it is perfectly clear, that he principally interfered and acted in the management of this part of the property, and made himself a sort of agent to the executors, or indeed acted as an executor. If he then, acting in that capacity, purchased the estate of an infant, he does so at his peril. * * * * * It is proved that *Sir W. Dillon* has, in an unlimited manner, acted in this trust; and he was well aware of the trust imposed on him, and the situation in which he was placed, for he declared the trust of the renewed lease of *Bogside.* * * * * * For when *Sir W. Dillon* took the active part he did, in the affairs of these infants, he clothed himself with a trust."

I have cited from this case, because it seems to be the strongest referred to, for the plaintiff's position, but it differs from this case in the essential circumstance, that the interference was with rights and property which the plaintiff possessed and owned, and in thus acting the defendant "clothed himself with a trust." In this case nothing was obtained to which the plaintiff had any legal right. He was, at most, only prevented from obtaining the voluntary clemency of his creditor, an interest too unsubstantial for judicial protection. The defendant committed a fraud, but it was a fraud upon Malcolm, and not upon the plaintiff, and this is the difficulty with the plaintiff's case. It is said that Malcolm put the judgment in the defendant's hands for the plaintiff, and that the plaintiff had the legal right to accept and receive it. True, Malcolm was willing to accept $500 from the plaintiff for the judgment, and in assigning it, he supposed he was doing it for the benefit of the plaintiff; but such was not the fact. The assignment was, in fact, received for the benefit of the defendant, and induced by his fraud, and this brings me to another feature of the case, which I regard as material, in determining the rights of the plaintiff

to relief. Malcolm was the injured party, and he commenced an action to set aside the assignment, which was compromised before trial, by an arrangement between him and the defendant, by which they agreed to divide the judgment between them. The original agreement of purchase by the defendant was substantially set aside, by this arrangement, by the parties themselves, for the falsehood and fraud of the defendant, and all this was done before the present action was commenced. Suppose the defendant, on being charged by Malcolm, had surrendered the judgment, and reassigned it, and thus rescinded the contract, what possible claim would the plaintiff have had against either the defendant or Malcolm? No one will pretend that he would have had any. If not, how is his condition improved by the circumstance that Malcolm, upon a compromise of the disputed question, whether there was a fraud or not, agreed that the plaintiff might have an interest in the judgment? In the one case, the defendant would have yielded up the whole of the fruits of the alleged fraud to the party defrauded; in the other, he was permitted to retain a portion, not by virtue of the original transaction, but as a settlement of the question, whether a fraud was in fact committed. Malcolm had a right to let the defendant have a portion of the judgment, either with or without consideration; and the defendant holds his interest now, not by the purchase induced by his falsehood, in relation to the plaintiff, but under the new agreement, made upon the rescission of it.

The plaintiff is a stranger to this transaction, and has no interest in it, legal or equitable. It was very uncivil in the defendant, Roach, to purchase the judgment and enforce it against the plaintiff, and as a question of abstract morals, indefensible toward the plaintiff; but it belongs to that class of wrongs which cannot be redressed in courts of justice. As to the plaintiff, there was neither fraud or damage, both of which are indispensable to the maintenance of such an action.

The judgment must be affirmed.

RAPALLO, J., read a dissenting opinion, maintaining that the assignment of the judgment, having been intended by Malcolm for the benefit of Garvey, and Roach with knowledge of this, having procured it to be made to himself, by representing to Malcolm that he, Roach, came from Garvey, and was acting for his benefit, and the assignment having thus been delivered to and received by Roach, in the assumed character of Garvey's representative, Roach, in fact, received it as trustee for Garvey.

That Garvey had the right to affirm this trust, and claim the benefit of it, though created without his previous authority, knowledge, or privity.

And that the title having passed by a perfect assignment, the trust could be enforced, though voluntary. (4 Kent Com., 307; 4 Johns. Ch., 136; 1 Johns. Cas., 205; 1 Johns. Ch., 119, 473; 3 Johns. Ch., 261; 5 Hill, 586; *Bill* v. *Cureton*, 2 M. & K., 510; *Petre* v. *Epinasse*, 2 M. & K., 496; Adams Eq., 31; 11 Wend., 249, 250.)

That the maxim " *Omnis ratihabitio retroharitur, et mandato equiparatur,*" was applicable to this case. (Dunlap's Paley on Agy. 324; Broom's Leg. Max., 835; 6 M. & Gr., 242; 4 Exch. R., 798, 799.)

That to entitle Garvey to adopt and enforce the trust, it was not necessary, either that he should have had any previous title or right to the property, or that any relation should have previously existed between him and Roach, by virtue whereof Roach owed a duty to Garvey, other than that which sprang out of the transaction itself, citing *Marriot* v. *Marriot* (1 Stra., 666, 673); 1 Phil. Ch., 133, 145; 5 Beavan, 469; 9 Ves., 516; 3 Ves., 155; 7 Sim., 644; 3 My. & Cr., 229; 11 Ves., 638; *Sweet* v. *Jacocks* (6 Paige, 359); 1 Ball & Beatty, 409; Story Eq., § 256, 781.

That Roach could not be permitted to set up his own fraudulent intent to appropriate the property to himself, in negation of the trust in favor of Garvey, which he ostensibly assumed, and by assuming which he obtained the assignment.

That Garvey's rights were, therefore, the same as if Roach

had actually intended, at the time he took the assignment, to hold it for Garvey's benefit. He actually took it for Garvey, notwithstanding any secret intent he may have had to defraud him.

That Garvey could not be deprived of his right to affirm the trust, by any subsequent dealing between Malcolm and Roach, to which he was not a party. (4 J. Ch., 136; 1 How., 476; 2 M. & K., 496; 3 M. & K., 36, 43; 5 ʻHill, 585, 586.)

For affirmance, Ch. J. ALLEN, GROVER and FOLGER, JJ.; for reversal, RAPALLO and PECKHAM, JJ.

Judgment affirmed.