PALMER v. GREAT WESTERN INS. CO.

(Common Pleas of New York City and County, General Term. November 5, 1894.)

1. MARINE INSURANCE—REAL PARTY IN INTEREST—UNDISCLOSED OWNER.

Where a policy is procured by the agent of the owners, and is payable to him, "on account of whom it may concern," the owners may sue on the policy in their own name.

2. MARINE INSURANCE—DEDUCTING PRIOR INSURANCE.

Where the agent of a ship owner, for his own benefit, and without knowledge of his principal, procures insurance on the ship, and the amount is paid to him on loss, the owner is not chargeable therewith under a subsequent policy procured for his benefit, which provides that the assurer shall be liable only for the deficiency remaining after applying towards the payment of any loss to the interest assured the amount of all prior insurance, but that subsequent insurance should not impair the assurer's liability for the amount assured.

3. PLEADING—IMMATERIAL VARIANCE.

Where the complaint in an action on a marine insurance policy alleges that plaintiff owned 43 shares, evidence that he owned 51 shares does not change the cause of action, and therefore the variance is immaterial.

4. SAME—AMERICAN CLAUSE—CONTRIBUTION FROM SUBSEQUENT ASSURER.

In an action on a policy providing that the assurer should be liable only for the deficiency remaining after applying to the loss the amount of all prior insurance, but that the assurer should not be entitled, in the event of loss, for contribution from subsequent assurance, it is no defense that plaintiff had been already otherwise indemnified by an insurer subsequent to defendant.

5. INSURANCE—PROOFS OF LOSS—WAIVER.

Receiving and retaining proofs of loss without objecting to their sufficiency is a waiver of their objection.

6. JUDGMENT—RES JUDICATA—PARTIES.

A judgment in an action by several plaintiffs is, in a subsequent action by one of such plaintiffs only against the same defendant, res judicata as to issues involved in the first action.

Appeal from trial term.

Action by Acalus L. Palmer against the Great Western Insurance Company on a policy of marine insurance. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial made on the minutes, defendant appeals. Affirmed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

Henry W. Hardon and Treadwell Cleveland, for appellant.

W. W. Goodrich, for respondent.

BISCHOFF, J.  The action was upon the defendant's policy, dated January 18, 1879, insuring P. J. Nevins & Son, "on account of whom it may concern," against loss from the perils of the sea, barratry of the master or crew, and all other perils, losses, or misfortunes which should come to the hurt, detriment, or damage of the bark Brothers' Pride, her tackle, apparel, and other furniture, "at and from Cardiff to and from Cienfuegos $^{and}_{or}$ other port or ports in Cuba, and thence to a port north of Hatteras," in the sum of $2,000.  The bark, inclusive of her tackle, apparel, and other furniture, was, by the terms of the policy, "valued at sixteen thousand dollars, without any other account to be given by the assured to the assurers"; and payment, in the event of loss, was to be made to C. A. Palmer.  It was further provided by the policy that the loss, if any, should be paid within 30 days after proofs of loss and interest in the bark; that the assurer should be liable only for the deficiency remaining after applying towards the payment of any loss to the interest assured the amount of all prior insurance, but that subsequent insurance should not have the effect of impairing the assurer's liability for the amount assured; that the insurance should inure to the assured personally, and not to exceed his interest at the time the policy was negotiated; that the policy should be void if transferred or assigned without the consent of the assurer; and that any loss to the interest assured should be adjusted on the basis of the agreed valuation of the bark, her tackle, apparel, and other furniture.  The trial resulted in a verdict for the plaintiff, and from the judgment entered thereon, as well as from an order denying a motion on the minutes for a new trial, the defendant appeals.

The complaint alleged that on or about May 7, 1879, the Brothers' Pride, while at sea, and bound on her voyage from a port in Cuba to a port north of Hatteras, was wrecked and totally lost from one of the causes insured against; that at the time of the commencement of the risk, and up to the time of the loss, the plaintiff was and continued to be the owner of 43 sixty-fourth parts of the bark; that he had complied with all the conditions of the insurance on his part to be performed, and given due notice and proof of his interest and loss to the defendant; and that no part of the sum assured was paid, although such payment was duly demanded.  The answer denied each of the aforementioned allegations of the complaint, and interposed, as affirmative defenses, that the Brothers' Pride was scuttled and sunk, or cast away, with the privity, connivance, and consent of the plaintiff, and solely to claim the insurance money; that the policy was avoided because of the false and fraudulent character of the proofs submitted, by the existence of prior insurance, by means of which the plaintiff was fully indemnified, and because the bark was rendered unseaworthy from an excessive cargo; and, furthermore, that the policy was void because it was effected with intent to defraud the defendant, and by means of fraudulent misrepresentation, suppression, and concealment of material facts.  By supplemental complaint it was alleged that sub-

sequent to the commencement of this action the plaintiff, jointly with one Daniel J. McLaughlin and C. A. Palmer, recovered a judgment on the merits against the defendant, in the superior court of the city of New York, upon a policy of insurance affecting the Brothers' Pride for the same voyage. The answer to the supplemental complaint disputed the identity of the issues in this action with those in the superior court action. On this appeal the defendant urges as grounds for reversal that the plaintiff, not having been a party to the insurance contract, could not maintain an action to recover thereon; that the defendant was discharged from liability under the policy in suit because the plaintiff was fully indemnified by prior insurance; that the defendant was discharged from liability because the plaintiff was otherwise fully indemnified; that the plaintiff did not comply with the conditions of the policy in suit respecting proofs of loss and interest; that there was a failure of proof respecting the seaworthiness of the Brothers' Pride, or that she was lost from one of the causes insured against, and respecting any demand for payment of the policy in suit; that there was material error in the rulings of the trial judge. We proceed to notice these grounds seriatim.

1. That the plaintiff could not maintain the action because he was not a party to the insurance contract. It is sufficient to say to this that in McLaughlin v. Insurance Co., 20 N. Y. Supp. 536, this court held an action upon a policy in precisely the same words ("P. I. Nevins & Son, on account of whom it may concern; in case of loss to be paid to C. A. Palmer"), to be maintainable by an owner not specifically named, upon proof that the insurance was intended to be effected for his benefit. The point is there discussed, and the accuracy of that decision we here affirm. See, further, Hooper v. Robinson, 98 U. S. 528, and note to same case in 25 U. S. (Lawy. Ed.) 219. The requisite proof appeared in this action from the testimony of the plaintiff and of his witness W. H. Nevins. True, there may be said to have been a conflict of evidence respecting the fact, but it was properly submitted to and determined by the jury in the plaintiff's favor.

That the plaintiff was permitted to recover upon proof that he owned 51 of the 64 shares of the bark, whereas the complaint alleged his ownership to be 43 shares, and that no amendment of the complaint was had, does not invalidate the judgment. The rule which requires the recovery to be secundum allegata relates to the cause of action; that is to say, no recovery will be permitted upon a cause of action other than the one alleged. Plainly, proof that the plaintiff owned 51 instead of 43 shares did not change the cause of action. Defendant did not, when the proof was offered, claim to have been surprised or misled. The only objections to the proof were that it was irrelevant, immaterial, and incompetent. The variance, therefore, was immaterial, and did not require amendment of the complaint. Walsh v. Insurance Co., 32 N. Y. 427, 439; Bank v. Woods, 28 N. Y. 545; Catlin v. Gunter, 11 N. Y. 374; Place v. Minister, 65 N. Y. 89. The objections stated were untenable, as the plain purport of the evidence was to meet and refute the de-

fendant's evidence in support of the defense that the plaintiff was fully indemnified by prior insurance. Neither can we say that the finding that the plaintiff was the owner of 51 shares was against the weight of the evidence, or without adequate support in the evidence. Both the plaintiff and his son C. A. Palmer testified that the eight shares which, from the St. Johns registry, appeared in the name of the latter, were in fact the property of the former; the same having been purchased by the son, acting in that regard as the agent and attorney for the father, at a sale under foreclosure of a mortgage held by the latter. We do not fail to observe that the father's ownership of these eight shares was called in question by the alleged testimony of father and son when examined as witnesses for the defense on the trial of Capt. Tower for having cast the bark Brothers' Pride away, and from which it appeared that both witnesses then admitted the eight shares to have been the property of the son. Nor do we fail to consider the evidence for the defense on the trial of this action to the effect that both father and son, on several other occasions, had made statements which conflicted with the father's claim of ownership of the eight shares. But the accuracy of the minutes of the testimony taken by Chief Justice Allen, who presided at the trial of Capt. Tower, was disputed by the witnesses on the trial of this action; and the conflicting statements respecting the ownership of the eight shares were explained to have been made with reference to the fact that the shares appeared of record in the son's name, and at times when the father's right to those shares was in no manner questioned. Under the circumstances, therefore, it appears to have been proper that the jury should decide the disputed question of fact, and though, upon the evidence, they might well have found otherwise, we cannot say that, in finding the plaintiff to have been the owner, they erred.

2. That the defendant was discharged from liability under the policy in suit because the plaintiff was fully indemnified by prior insurance. For the purposes of measuring the defendant's liability, the premiums paid for the prior insurance are to be deducted from the amount. Phil. Ins. § 1257. Observing this, and accepting the prior insurance at £2,320, or £2,500 less premiums £180, which, in current money at $4.86, is equal to $11,275.20, and the plaintiff's interest in the bark as 51-64, as found by the jury, which, on the basis of the agreed valuation of $16,000, was worth above $13,600, it is, of course, apparent that the plaintiff was entitled to the whole amount of the policy in suit, $2,000. Defendant contends, however, that the plaintiff is chargeable with £600 additional, for prior insurance, and that if so charged he will appear to have been fully indemnified without resort to the policy in suit. Touching these £600, there was evidence tending to show that the insurance was a personal speculation of one of the plaintiff's agents, and paid to him without the plaintiff's knowledge, and that it was never intended for or received by the latter. Upon proper submission of the question to them, the jury so found. It is inconceivable, therefore, how the plaintiff could have claimed the benefit of that insurance; and, if not, assuredly it is not to be charged to him. Defendant seeks,

in this respect, to invoke the aid of the familiar principle that an agent will not be permitted to retain a personal profit out of his principal's transactions, but will be compelled to account to his principal for the profit. That principle, however, will not enable one to claim the fruit of a fraud perpetrated by his agent upon a third person, and for which the latter has redress against the agent. If the agent had no insurable interest in the subject of the insurance, he was not entitled to receive the proceeds of the policy intended to be effected for his benefit. The insurance not having been effected for the benefit of the principal, he has no right to claim it, and if he does he participates in the fraud. If the sum assured is paid to him, the defrauded assurer is entitled to its return, and may resort against the principal to recover it. Upon no proper theory, therefore, is the plaintiff to be charged with the £600 above referred to. Garvey v. Jarvis, 46 N. Y. 310.

3. That the defendant was discharged from liability under the policy in suit because the plaintiff was otherwise fully indemnified. This has reference to the payment to the plaintiff, or rather to C. A. Palmer for the plaintiff, by the New England Insurance Company, of the sum of $2,000 upon a policy affecting the hull and tackle of the Brothers' Pride. The New England Insurance Company's policy, however, was subsequent to the one in suit, and both policies contained what is usually termed the "American Clause," to wit, that the assurer should be answerable only for the deficiency remaining after applying towards the payment of any loss the amount of all prior insurance, but that the assurer should not be entitled, in the event of loss, to contribution from subsequent assurers. This clause was elaborately discussed and construed in Insurance Co. v. Griswold, 14 Wend. 399, and it was said by Chancellor Walworth (page 483), with reference thereto:

"It appears to be impossible, therefore, under this policy, that the circumstance of there being subsequent policies underwritten by others could make any difference as to the apportionment of the loss as between the underwriter in the first policy and the assured, or those who represented the insurable interest on board at the time of the loss, not covered by that policy. If either of the subsequent underwriters have paid to the assured, upon a compromise of the claims made upon them, more than they were legally bound to pay under their contracts, that is a matter with which the underwriters in the first policy have no concern, since they are not bound to refund anything to the subsequent underwriters, and never had any claim upon them for contribution. If the assured have received anything under such a compromise which they cannot conscientiously retain, they should restore it to those from whom it has been received; but the American Insurance Company, or its stockholders, have no equitable right to insist that it shall be allowed to them in discharge of their legal liability under the first policy."

The case last above referred to seems to be conclusive that the point under discussion cannot avail the defendant for reversal. See, also, Phil. Ins. § 1251; Thomas v. Insurance Co., 119 Mass. 122; Lucas v. Insurance Co., 6 Cow. 635.

4. That the plaintiff did not comply with the conditions of the policy in suit respecting proofs of loss and interest. By this is meant that the plaintiff did not furnish the proofs required of him as a condition precedent to his right of action. It appears, how-

ever, in evidence, that proofs of loss and interest were furnished, and that the same were retained by the defendant without objection as to their sufficiency, and that the refusal to pay the sum assured was based upon grounds which did not relate to the sufficiency of the proofs furnished.   Under the circumstances, therefore, further proof was waived by the defendant, and the court properly instructed the jury to that effect.   Bodle v. Insurance Co., 2 N. Y. 53; O'Neil v. Insurance Co., 3 N. Y. 122; Keeney v. Insurance Co., 71 N. Y. 396; Brink v. Insurance Co., 80 N. Y. 108.

5. That there was a failure of proof respecting the seaworthiness of the Brothers' Pride, or that she was lost from one of the causes insured against.   From the record of this appeal, it appears unchallenged that the superior court action was originally brought to recover upon three several policies,—two of them, including the one in suit, being intended to cover the hull and tackle of the Brothers' Pride,—and the other, her freight; that the conditions of the insurance, as well as the causes of loss insured against, were the same in each instance, and that each of the policies comprehended a risk for the voyage from a port in Cuba to a port north of Hatteras, while bound on which the bark was lost; that the policies varied only in that under those covering the hull the defendant also assumed the risk at and from Cardiff, from which port the bark sailed to Cienfuegos and Cardenas, both in Cuba, immediately preceding her voyage from the latter port; that before the trial of the superior court action the claims under the policies on the hull were withdrawn; and that the recovery therein was upon the freight policy only.   That the superior court judgment was conclusive in another action between the same parties as to all the issues litigated, or which might have been litigated, in the former action, was held by this court in McLaughlin v. Insurance Co., supra.   That the former recovery was by the plaintiff in this action jointly with others did not impair the effect of the judgment as res judicata.   Lawrence v. Hunt, 10 Wend. 82; Miller v. Manice, 6 Hill, 114.   To entitle the plaintiffs in the superior court action to any recovery whatsoever, it was essential for them to establish the seaworthiness of the bark when she sailed from Cienfuegos upon her last voyage, and that she was lost, while bound on that voyage, from one of the causes insured against.   Those issues were directly involved on the trial of that action, and decided in favor of the plaintiffs.   Hence, they could not be litigated again in this action, and the learned trial judge properly excluded evidence to show to the contrary of the facts established by the judgment.   For the same reasons, also, the defendant's motions for a nonsuit and for the direction of a verdict, in so far as those motions were predicated of the alleged absence of proof of the same facts, were properly denied.   On like grounds, the defendant's exceptions taken to the charge respecting the conclusiveness of the former recovery, and to the refusals of the court to submit the facts thereby established for determination by the jury, are unavailable for the assignment of error.   That the Brothers' Pride was seaworthy when she left Cardiff for Cienfuegos appeared from the testimony

of the plaintiff's witnesses Grant and Brownell (14 Am. & Eng. Enc. Law, p. 368), and that she actually departed from Cardiff, bound for Cienfuegos, from thence to Cardenas, and from the latter port on her last voyage, was shown by the testimony of Roberts, another of the plaintiff's witnesses. These facts were submitted to the jury, and found by them. That the bark was, when she sailed from Cienfuegos and Cardenas, in seaworthy condition, appeared from the superior court judgment. Unquestionably, therefore, the risk assumed by the defendant under the policy in suit attached, and continued at the time the bark was lost. Id. p. 369, and cases cited.

6. That there was material error in the rulings of the trial judge. Many of the exceptions taken to the rulings have been considered in our discussion of the points hereinbefore noticed. Those remaining were not specially argued by counsel. They have, however, been examined, and with respect to them our conclusion is that no error of gravity is presented. The judgment and order appealed from should be affirmed, with costs. All concur.