SHIPPEN, President.
 

 —The case was shortly this.
 
 Reuben Fairchild,
 
 in the year 1775, sailed from
 
 New-York,
 
 mailer of a vessel belonging to the plaintiff and himself, on a circuitous
 
 *52
 
 voyage. He was likewise the factor of the plaintiffs, and had discretionary orders to trade for them and to fell the vessel as well as the cargo. In the course of the voyage he fold both vessel and cargo, and made some remittances to his owners. While he was at
 
 St.
 
 Eustatius, and when he was about to leave it, he put his affairs into the hands of
 
 William
 
 Smith, then a merchant there, with power to collect his outstanding debts, among which were four debts due upon note, or bond, payable to Fairchild; but which
 
 Smith
 
 believes arose from, the sale of the cargo belonging to the plaintiffs. These notes, together with some other papers, were delivered to Smith, inclosed in a cover, on which
 
 Fairchild
 
 had made the following memorandum: “V
 
 an Bibber & Harrison, Thomas Wallace, Archibald &
 
 “
 
 John Blair and Thomas M'Farran’s
 
 obligations, are on
 
 the
 
 “account of Messrs.
 
 Jacob Van Voorhis, Ram Rapalje,
 
 and “Peter
 
 Mercier,
 
 merchants of
 
 New-York,
 
 together with outstanding debts; this is in case any accident happens to me." After
 
 Fairchild’s
 
 departure from
 
 St. Eustatius,
 
 and in the years 1777 and 1778,
 
 Smith
 
 collected the outstanding debts; and, among others, those due on the four notes payable to
 
 Fairchild.
 
 This money remained in
 
 Smith’s
 
 hands till September 1779; when a foreign attachment was sued out by
 
 Benjamin Amory,
 
 the present Defendant, against the effects of
 
 Fairchild,
 
 in the hands of
 
 William Smith,
 
 for a private debt
 
 of Fairchild
 
 due to
 
 Amory. Smith
 
 appeared to the action, employed counsel to defend it, and on the hearing, the court there confirmed the attachment, and condemned the garnishee to pay to the plaintiff in the attachment the money due to him from Fairchild; which money was accordingly paid, and the present action is brought by
 
 Rapalje & Mercier,
 
 to recover back from
 
 Amory
 
 the money so recovered and paid to him by
 
 Smith,
 
 as for money had and received to the plaintiffs’ use.
 

 The principles on which the action is brought are, that the money arising from the notes were really the property of the plaintiffs, and not of Fairchild; that
 
 Smith
 
 had no money of
 
 Fairchild
 
 in his hands, but what arose from those notes; and that it was therefore wrongfully and, against conscience, received by
 
 Amory
 
 as the property of
 
 Fairchild.
 

 On the trial of this cause, the merits were not at all investigated on the part of the defendant; who suffered a verdict to pass against him without opposition, relying on the point of law, that he was protected by the judgment of the court at
 
 St. Eustatius.
 
 This point was therefore referred for the consideration of the court.
 

 It is contended on the part of the Defendant, that his money, having been attached in the hands of
 
 Smith,
 
 as the property of
 
 Fairchild,
 
 and on the trial adjudged to be his property, tha
 
 *53
 
 judgment cannot be reversed here in a collateral action. That the judgments of foreign courts must necessarily bind ours, and be considered as conclusive, at least in those cases, where the aid of this court is not asked to carry their judgments into effect. And that if our courts were to reverse the judgments of foreign courts, they might reverse ours; which would introduce a kind of warfare between the judicatures of different countries, to the risk of the public peace, as well as to the ruin of the contending parties. To this it is answered by the Plaintiffs counsel, that however definitive a sentence of a foreign court may be, as between the parties to the suit, it cannot bind third persons. That the present plaintiffs were no parties to that suit, and cannot therefore be bound by any judgment in it; they having had no opportunity of maintaining their right to the property in question.
 

 The discussion of this point on the argument, led to others not taken notice of on the trial; but which must necessarily be considered by the court on a motion for a new trial.
 

 Great reliance has been had on the part of the Plaintiffs, on the manifest equity which they alledge appears on their side of the question; and, it is contended, that the court ought not to set aside a verdict upon a point of
 
 summum
 
 jus, where it is not to attain the justice of the case.
 

 This has naturally led us to consider the equity, as well as the law, arising upon the case. Taking it up in a general view, there does not appear to us to be any great preponderancy of equity on either side; both Plaintiffs and defendants were fair and honest creditors of
 
 Fairchild;
 
 the Plaintiffs entrusted him as their agent, the Defendant as his debtor. It was natural and fair for each side to take every legal measure to obtain payment of their demands; and whoever in such a case has got a legal advantage, this court cannot say he is not entitled to hold it.
 

 The notes in question were made payable to
 
 Fairchild
 
 himself; they were put into the hands of
 
 Smith
 
 for collection; the money when collected remained in
 
 Smith's
 
 hands, above a year as the money of Fairchild; there was no assignment of these notes to the Plaintiffs, in any other way than by endorsing a memorandum on the paper which inclosed them, that in cafe of accident they were obligations on account of
 
 Rapalje
 
 & Mercier, merchants
 
 in New-York. Smith
 
 was the agent of
 
 Fairchild,
 
 and not of
 
 Rapalje
 
 &
 
 Mercier.
 
 When he received the money on the notes he carried it to the credit of Fairchild, and not to the credit of the Plaintiffs. In the receipt which he gave
 
 Fairchild
 
 for the notes, he promises to re-deliver them to
 
 him
 
 or his assignees, and no mention whatever is made of the plaintiffs. In his account current with
 
 Fairchild,
 
 he charges
 
 him
 
 with the amount of divers invoices of goods shipt for him, and credits
 
 *54
 

 him
 
 with the money received, as well from some other persons, as from those who gave the notes, and
 
 finally strikes a balance in favour of Fairchild.
 
 If all these matters appeared to the court at
 
 St. Eustatius,
 
 as probably they did, it is not much to be wondered at, that they should determine that
 
 Smith,
 
 as garnishee in the attachment, had effects of
 
 Fairchild
 
 in his hands.
 

 In point of law the court entertained a considerable doubt, whether under the circumstances of the case, an action for money had and received, was at all supportable against the defendant. As the counsel for the plaintiffs appeared sanguine in the cause, we directed a new argument upon this point, and it has accordingly been argued ably and ingeniously ; but, on full consideration, we must retain our former sentiments, that it cannot be supported. If this had been the case of a specific article, the property in which had been the subject of dispute
 
 between Amory
 
 and Fairchild, any decision with regard to that property, would certainly not have prevented the plaintiffs, being third persons, not parties to the suit, from supporting an action of
 
 trover,
 
 if they could have shewn better right. But the contest in
 
 St. Eustatius
 
 did not regard any specific property; but was an attachment against the general effects of
 
 Fairchild,
 
 and the action brought here is not an action of
 
 trover, detinue,
 
 or replevin, for any specific property, but an action for money had and received to the use of the plaintiffs. True distinction between specific property and money is well established; in the one case the true owner will have a right to recover it from any person who is found in possession of it; but in the case of money (the medium of commerce) to enable the party to recover, there, must be either some privity between the owner and receiver, or there must be a
 
 mala fides,
 
 an unjust receipt of the money, or at least a receipt of it without a valuable consideration. In those cases, but in no other, the true owner, by identifying the money, and tracing it into the hands of the receiver, may support an action for money had and received, against an utter stranger ; and under such circumstances, money is considered in the nature of specific property. This distinction is fully explained by
 
 Lord Mansfield
 
 in
 
 Cowper’s Reports, p. 200.
 

 In this case there was no privity between the plaintiffs and the defendant; there was no contract, either express or implied, between them; the money was not received as the money of the plaintiffs; the defendant was a creditor of
 
 Fairchild,
 
 who recovered and received his debt in a due course of law, by the judgment of a court having jurisdiction of the cause; there was no fraud or collusion, no
 
 mala fides,
 
 no want of consideration; an honest debt was due; and though a distinction has been made between, a past consideration, as a debt, and a present consideration given, no such distinction can hold in a case of this sort; as tire
 
 mala fides,
 
 which could alone make the defendant
 
 *55
 
 answerable, would be alike wanting in either case. There seems no difference in point of fairness, between the defendant’s receiving the money under a judgment of court, without fraud or collusion, and his receiving it from the hands of
 
 Fairchild
 
 himself. If
 
 Fairchild
 
 had received the money on these notes himself, and paid it voluntarily to
 
 Amory,
 
 it could not be pretended that the plaintiffs, although the money ought to have been paid to them, could have any recourse to
 
 Amory
 
 ; for, if it might be the subject of controversy when a man receives a debt, whether the debtor pays it out of his own money, or another’s, who would be safe in receiving money ? The nature of money, and the nature of commerce, forbid such an enquiry. The payment by Smith, the agent of Fairchild, was in effect a payment by
 
 Fairchild
 
 ; and its being made in consequence of a judgment of court, could, at least, not weaken the defendant’s right of receiving it.
 

 For these reasons, we are of opinion, that the present action is not supportable against Amory, and consequently that the verdict was against law. The motion for a new trial is therefore granted.
 
 *
 

 *
 

 In consequence of this decision, the cause was removed into the Supreme Court, where the principles contained in Judge Shippen's opinion, were also recognized and established. See post.