## Bouldin vs. Alexander.

Appeal from the Trigg Circuit; BENJ. SHACKELFORD, Judge.

*Injunctions. Jurisdiction. Replevin. Execution.*

Judge MILLS delivered the Opinion of the Court.

THIS is a bill in equity, enjoining an execution from selling, through the hands of the sheriff, two flat bottom boats, lying at Boyd's landing on Cumberland river. At the time of the seizure of these boats, Alexander, the complainant, be-

low was in the act of lading, for a voyage down the Mississippi, and his crew was hired, and engaged with him. They were taken by the sheriff, as the estate of David S. Campbell, by an execution in favor of Bouldin. Alexander alleges the boats are his, and not the property of Campbell, and prays that his title may be quieted.

The claim was resisted by Bouldin, and the right of Alexander contested. But it was sustained by a decree of the court below, and a perpetual injunction granted.

It has been so often held by this court that a claim of this character is of a legal nature, and that the party asserting it must do it in a court of law, that to depart from the rule now, could admit of no apology. The cases reported are numerous, and to cite them would be a vain parade of authority, and moreover, many cases have gone off without being reported, because the law was considered as settled. As late however, as the case of Watkins vs. Logan, Davis &c. 3 Mon. 20, a written opinion, was delivered, sustaining the same principles.

It must, however, be admitted, that the rule is general, and not universal, and that there will be found exceptions to it. If cases can be found where there is no legal remedy, or where the legal remedy would be inadequate, or where there was some potent obstruction to the legal remedy, they may be exceptions; and as the chancellor in like cases, is permitted to intrude himself into the precincts of a court of law, and operate on legal questions, so he may in this instance. On this ground it is contended that this bill ought to be sustained; that this case is peculiar and forms a just exception to the general rule. It is insisted, that neither trespass, trover, nor detinue, after the estate was sold, could have remunerated Alexander for the loss of his trip, and that no remedy would have been adequate which would not have restored to him the immediate possession of these boats.

We grant that the immediate restoration of these boats was necessary to do justice to Alexander, and

*Margin notes:*

BOULDIN vs. ALEXANDER.

under an execution against another person.

Decree of the circuit court for the complainant.

Remedy of the owner of property seized under an execution against another, is at law, not in equity.

Where in such case there is no adequate remedy at law, the chancellor may afford relief.

BOULDIN
vs.
ALEXANDER.

if there was no legal remedy, which could have given him such possession, we should be disposed to sustain his bill for that purpose, especially as his title to the boats appears to be well founded.

Action of replevin is not confined to cases of distress, but is the remedy for any wrongful *taking* the property of the owner out of his possession.

But there is such a remedy. And although it has fallen somewhat into disuse in this country, yet if practised, it would be found a convenient mode of trying, what many have attempted to try by bills in equity of this nature. We allude to the action of replevin. By that the thing replevied at the execution of the writ is returned to the plaintiff, and the subsequent proceedings, are calculated to try the right to the thing replevied. It has been said in some books, and particularly by justice Blackstone, in his commentaries, that replevin is a remedy founded on a distress; but as Lord Redesdale has well observed, in Shannon vs. Shannon, 1 Sch. and Lef. 325, "this definition is certainly too narrow; many antient authorities will be found in the books of replevin being brought where there was no distress. The writ of replevin is founded on a *taking*, and the right, which the party from whom the goods were taken, has, to have them restored to him, until the question of title to the goods is determined. The person who takes them, may claim property in them, and if he does, the sheriff cannot deliver the goods until that question is tried; but that claim of property can be made only where there has been a taking; and it appears to me (says the same author) that the writ of replevin is calculated in such cases to supply the place of detinue and trover, and to prevent the party from whom the goods are taken being put to those actions, except where the other can show property. Replevin must be applied to the case of an unequivocal possession and of a *taking;* it would otherwise not be reasonable; for if there has not been a *taking* from the plaintiff, but the defendant had the goods in his quiet possession by other means, the law presumes they are, *pri ma facie,* the property of the defendant; and there is no reason why it should, in such case, give a writ to change the possession in the first instance, against such presumption of property. It is much fairer to throw the *onus* on the person who has not had the

possession, than on him who has had it." Without referring particularly to the authors, it will be found, that this doctrine of Redesdale is in strict conformity to the antient law. It has likewise been followed in the American States; see Pangburn vs. Partridge, 7 John. 140; 1 Dall. 157; 2 Dall. 54. Actions of replevin. have also passed through this court, applied to other cases than mere distress, where the applicability of the remedy to such other cases has not been questioned; Kirley vs. Hume, &c. 3 Mon, 182.

It may, however, be said, that property or estate taken under execution, cannot be replevied. This, as a general principle, is laid down in all·the books that treat of the action of replevin; and we have no doubt, that the defendant in an. execution cannot try the validity of an execution by issuing a writ. of replevin, or thus relieve his estate from the grasp of. the law. But the rule, as laid down, was never designed to take away the right of strangers to an execution relieving their estate when taken by it. As to them, the taking by color of the execution against another, is so tortious, that trespass will lie, and the tort may be waived, and the writ of replevin be issued. To prevent the bringing such an action in the state of Pennsylvania, a statute was.passed, particularly relieving the sheriff from the action; which shews, that the understanding of the law was in that state, that the action lay before the statute. And after the statute, it was held, that the action lay against the vendee of the sheriff; so that the sheriff alone was protected: Shearick vs. Huber,. 6 Bin. 2. In the state of New-York, it has been clearly decided, that although the defendant in an. execution could not himself maintain the action, yet it might be brought by a third person, even against the sheriff, and consequently against the plaintiff when the sheriff, as is alleged in this case,. acted under his special authority; Thompson vs. Button, 14 John. 84: so that, according to good authority, the action of replevin will lie, in a case like the present.

It is true that if the plaintiff in replevin is defeated, he is subject to a judgment *de retorno habendo*,

BOULDIN
vs.
ALEXANDER.

Defendant in the execution by which the property was seized, cannot regain the possession by the writ of replevin; otherwise of. strangers to the process.

BOULDIN
VS.
ALEXANDER.

which admits of severe process when the goods are eloigned; and it may be urged, that taking these boats down the river would have rendered it impossible ever to have restored them, because they are not constructed to come up the stream, and that therefore he ought not to be subjected to such judgment, by being driven to such action. This supposes that he was not entitled to the estate, and yet ought to be permitted to issue the writ; when, if he was entitled to the estate, he never would be subject to such judgment, and if he was not entitled to the estate, he ought to be subject, and therefore the argument can have no weight, as it only operates in favor of him who issues the writ wrongfully. The chancellor, if the equitable remedy could be allowed, would require a bond to restore; and if the complaint was groundless ought generally to direct the restoration of the estate; so that a claimant making a wrong application to either court would be subjected to a like bond with surety, and might be subjected to a like sentence. Upon the whole, we conceive that the complainant in this case had adequate redress at law by action of replevin, and that his case cannot be made an exception to the general rule.

Judgment in case the pl'ff fails to replevin.

Decree, Chief Justice dissenting, reversed, with costs; and cause remanded, with directions to dissolve the injunction, and dismiss the bill with costs.

*Dissent of Chief Justice* BIBB.

BOULDIN sued his execution, bearing teste on the 28th Feb. 1825, against the estate of David S. Campbell, and caused it to be levied on two boats, lying at Boyds landing, on the Cumberland river, whilst Alexander was in the act of loading then with tobacco, to be freighted to New Orleans. One of these boats, built for Alexander by Wells and Brown, by special contract, had been delivered accordingly; the other he purchased of Josiah Barnett. Alexander exhibited his bill, setting forth, the special circumstances, his property, and possession of those boats before the teste of the execution, and the seizure under color of the execution against Campbell; that he had hired his crews; had partly loaded

his boats; that if deprived of them, or detained until after the sale advertised by the sheriff, his expenses of himself and crews would eat up the profits of the voyage, and perhaps the exportation of the tobacco would be totally broken up; that no damages which he could recover at law would compensate him for the detention, if not speedily restored to the possession of his boats. He prayed for and obtained restoration of his boats, and an injunction against further molestation, upon giving bond with security to pay all damages which Bouldin might sustain, in case his injunction should be dissolved.

Bouldin answered, that he believed the boats to be the property of Campbell, and built by him, and liable to the levy made.

On hearing the court perpetuated the injunction, adjudging the boats to be the property of Alexander, and not subject to the levy complained of. From this decree Bouldin appealed.

There is some colour of evidence that Campbell had assisted to build one of the boats; but whatever act or part he may have had in building the one or the other, the facts are clear, that Alexander was the *bone fide* possessor by purchase and delivery, made before the teste of the execution.

The only question is, as to the propriety of the remedy by bill in equity.

From the construction of these, and all such like boats, they are calculated only for descending, not for upward navigation. When descended to the lowest point to which they can be navigated, their capacities and utility, as boats, cease; they are treated as wastes. Their value intrinsically is small, their utility consists in their capacities to perform a single voyage, in transporting productions of the upper to the markets in the lower country, thereby giving to the owner, if the voyage is finished, profits upon a single adventure of his money, labour, care, and diligence, in the preparation of the boats, employment of crews, and risk of navigation.

The intrinsic value of the boats, if recovered in

BOULDIN
vs.
ALEXANDER.

Dissent of ch. jus. BIBB.

BOULDIN
vs.
ALEXANDER.

Dissent of
ch. jus. BIBB.

an action of trespass; would have been very far short of adequate redress to Alexander, for the act of seizing and selling his boats; detention and hindrance from the voyage and exportation of the tobacco would have been the utmost aggravation of the injury to him. But the expected profits. of a contemplated voyage, if prosperous and finished, could not have been recovered of the sheriff, or of Bouldin, for an unlawful seizure and sale. Such consequential damages are too remote and speculative, to be recovered in an action of trespass. In marine trespasses the consequential damages are more intimately connected with the tort; less remote and more certainly to be calculated, than in such trespasses as this bill brings to the consideration of the court. Yet in marine trespasses the probable profits of an unfinished voyage, afford no rule for estimating the damages, and such items are to be rejected; as decided by the Supreme Court of the United States, in the cases of the Amiable Nancy, 3. Wheat. 546; La Armistad de rues, 5. Wheat. 384. The diminution in value by reason of the injury, with the interest on the valuation, afford the true measure of estimating the damages in cases of marine trespass. (The Amiable Nancy, 3. Wheat. 546.)

There were damages, therefore, which the complainant, must have sustained, if he had been deprived of his boats, which could not have been recovered in an action of tresspass. It was essential to the complete redress of Alexander, that he should have been speedily restored to the possession of his boats; with liberty to make full and unrestrained use of them for the intended voyage.

By the opinion formed by a majority of the court, the remedy by bill in equity is denied in this, as well as in cases generally, of tortious seizure and detention of property; because a writ of replevin would lie. Whether such a writ will lie against a sheriff, to cause him to re-deliver goods and chattels taken in execution by virtue of a *fieri facias*, or by other colourable execution of the duties of his office, I give no opinion; because if such writ would lie, that does not prove to my mind, that the remedy by bill in equity should be denied. A man may have an elec-

tion of several remedies for the same injury: as, in
this case, the complainant had his election to have
tresspass, trover, or detinue.  But because these
remedies were within his election, it does not thence
follow that replevin would not lie; nor does it fol-
low, necessarily that a bill in equity will not be sus-
tained, because a writ of replevin may be sued.  So
one may elect to sue an action of covenant for
breach of an agreement, or to bring his bill in equi-
ty for specific performance; to which many other
examples might be added, of concurrent jurisdiction
of courts of law and courts of equity.

<strong>BOULDIN</strong><br>vs.<br><strong>ALEXANDER.</strong><br><br>Dissent of<br>ch. jus. BIBB.

That a writ of replevin will lie against the sher-
iff, by one not party to the execution, to have re-de-
livery of the goods taken in execution, has been
decided in the Supreme Court of New York.
While I acknowledge my very high respect for that
tribunal, I must own, that my mind hesitates much
to assent to the conclusion, that any one shall, of his
mere will, without the permission of a judge, but as
matter of right, arrest the property from the sheriff
or other officer, and so stop, delay, and hinder the
execution of the process.  If it will lie in case of goods
seized under execution, it will lie for goods seized
for non-payment of the revenue, &c. &c.  It may
be so; I mean not to express any decided opinion on
that subject, because I deem it unnecessary, as
weiging but little upon the present question.  The
condition of the bond upon suing a writ of replev-
in, and the condition of an injunction bond, are
very different.  The consequences of a judgment
*de retorno habendo*, in case Alexander had sued a writ
of replevin, to his surety, and to himself, would
have been very different from the effect of the in-
junction bond in case of dissolution of the injunc-
tion.  To have kept the boats within the state, to
answer a possible judgment *de retorno habendo*, would
have defeated the very end and profit for which
Alexander bought the boats.  By taking them to
N. Orleans, he put it out of his power to return them.
To this, however, it is answered, that if the property
was really Alexander's he was in no danger of judg-
ment *de retorno habendo*; and if the boats were not
his, he ought not to sue a writ of replevin.  To this

BOULDIN
v°.
ALEXANDER.

Dissent of
ch. jus. BIBB.

I reply, that the law is more certain in abstract theory, than in the practical administration; fact and law combined enter into the decision of the question between the parties litigant; from casualty, of death, non attendance or forgetfullness, of witnesses or other causes, the fact may not appear on the trial; the judge may differ in his opinion of the law from the party or his counsel, or may mistake the law. As Lord Mansfield said, in deciding a case for a wager upon a point of law, it would be very hard upon the gentlemen of the profession, if the law should ever come to be so certain, as that such a wager should be held unfair because one of the betters had no chance to win. In fact and experience, it is known, that the race is not always to the swift, nor the battle to the strong. The art and cunning of an adversary may prevail over fact and truth. In framing rules for the administration of justice, they should be reasonable and practical; they should not be such as will deter men from seeking their rights, nor lay them under such severe requisitions and penalties in prosecuting their reasonable and apparent claims, as that they can not find the necessary security, or be subjected to the mere power and arbitrary will of the adversary, in case of failure. If Alexander, had sued a writ of replevin, and after, carried the boats to New Orleans, the sheriff, upon a writ *de retorno habendo*, must have returned, that the boats were *eloigned—elongata*. Is it a reasonable rule, to prescribe to Alexander, to regain his property, that he should give bond and security to return the boats in case he fails in his action, when by so doing, and using his boats in the only way that they were fit for use, he incurred a risk of subjecting himself to the power of his adversary in a writ of *distresse infinite?* The remedy by bill in equity is preferable; because the injunction is obtained by application to the sound discretion of the judge, grounded on a statement of the right, verified by affidavit; the writ of replevin issues at the mere will of the plaintiff; the injunction bond is moulded by the chancellor, to suit the nature of the case; the bond in replevin is for the return of the property; the remedy in equity is under the control and authority of

the court, to make such orders from time to time as the facts and exigencies may require, and is therefore more in subserviency to the purposes and ends of justice. If Alexander had sued a writ of replevin to get back his boats, his removing them beyond the jurisdiction of the court, and beyond the possibility of return, would have been in violation of that which the law intends by allowing the writ and requiring bond and security to have a return of the property, if so awarded by the court. Full many an innocent man has been condemned, and many a guilty man has escaped; "—not always on the guilty head descends the fated flash." I do not think therefore, that Alexander was bound to incur the risk of a judgment *de retorno habendo*, with all the consequences attendant upon a return of *elongata*, however confident in his own mind, that the boats were not liable to the execution. I think it belongs to the jurisdiction of a court of equity to assure to the right owner the specific thing, when wrongfully dispossessed by colour of the precepts of the law.

There are cases in this court which deny the jurisdiction of a court of chancery; there are cases also which affirm the jurisdiction. The cases reported, which were discussed, and denied the jurisdiction, are Nesmieth vs. Bowler, 3 Bibb, 487, Kendrick vs. Arnold, 4 Bibb, 236; and Watkins vs. Logan &c. 3 Mon. 20; other cases have also been decided upon the authority of those, as, Meridith vs. Hickman, 1 Marsh. 242; Wickliffe and McKinley vs. Hickman, same book, and perhaps several others have been decided in this court *sub silentio*, upon the authority of Nesmieth vs. Bowler and Kendrick vs. Arnold. I recollect but one other case, and that went off because judge Owsley thought the court had no jurisdiction, and I was of opinion the court had jurisdiction, but that the complainant's claim was fraudulent. Opposed to those decisions, and in affirmation of the jurisdiction, are the cases of Meaux vs. Haggin, 2 Bibb, 244; McGinty's adm'r. vs. Haggin, 2 Bibb, 267; Randolph vs. Randolph, 3 Munf. 99; Wilson vs Trent and Butler, 3 Munf. 564; Osburn vs. Bank U. S. 9 Wheat. 845.

Vol. VII.                3 E

*Margin note:* BOULDIN vs. ALEXANDER.

Dissent of ch. jus. BIBB.

BOULDIN
vs.
ALEXANDER.
___
Dissent of
ch. jus. BIBB.

In McGinty's adm'r. vs. Haggin, the question of jurisdiction is examined, and affirmed on the ground that, "one of the great ends of equity is to aid the common law, in cases in which its protection and redress are inadequate to the common purposes of justice." The court further said: "*But* it appears in the cause, that the executions were levied on slaves. Now when we consider how often the common law redress of remunerating in damages the loss of slaves thus seized and sold, would *poorly compensate* the owner it is conceived, as forming a just case for the interposition of chancery, to enjoin the sale at law. The case of Meaux vs. Haggin &c. decided by this court at last term, was, in principle, just such a case, except that the court in that case thought the slaves, subject to the debt. But the question of jurisdiction was properly not controverted."

In consequence of the notice of the case of McGinty's adm'r. vs. Haggin, taken in Watkins vs. Logan &c. with a view to shake the authority of that case, upon this question of jurisdiction, I have again looked into the opinion last delivered, in McGinty's adm'r. vs. Haggin. The petition for a rehearing objected to the jurisdiction of a court of equity; it suggested, that the complainant, (the administratrix) ought to have set forth what assets came to her hands, before she should be relieved upon her bill claiming the slave in her own right, and that the court had mistaken the fact as to complainant's right of property. The answer had denied that the slave was the property of the complainant in her own right, and the evidence did not prove the slave levied on to be the one alluded to in the writing by which she claimed. The question of jurisdiction was certainly preliminary in its character; and if the appellate court had supposed that the case was not a proper subject of equitable jurisdiction, then the bill should have been dismissed for that cause, leaving the complainant to pursue her claim in a court competent to hear and decide upon it. So far from dismissing the bill for defects of jurisdiction, the court said: On a re-examination, two questions have principally attracted the attention of the court, "the first is, the failure of

the complainant to set forth the amount of assets, or an equivocal denial of any; 2nd. whether the property executed, belonged to the administratrix in her own right.  On both these grounds the court, on a more thorough examination of the case, is of opinion that the former opinion of this court cannot be maintained."  On the first point, the court enter into the reasoning, to show why she ought to have set forth the assets, so that they might have been applied to the execution which issued against her as administratrix; that as complainant seeking equity, she ought to do equity; and that by the omission to state the assets, the defendants were liable to repeated vexation; and conclude this first point by saying, "we cannot sustain the bill for this omission or failure on the part of the complainants."  Does this savour of a want of jurisdiction?  On the second point, the court decided the fact against the complainant.  She had not shown that the property levied on was the part assigned to her; so as not to be liable to the execution against her as administratrix.  Thus her claim was concluded by the decision.  Comparing the two opinions, with a view to this question of jurisdiction, I feel fully warranted in saying, the last opinion is a confirmation of the first upon this question, and has all the force of a decision in favor of the jurisdiction decided, reconsidered, and approved.  Will it be said, that in the last opinion, the judges of this court did not understand the difference of effect, between turning the case upon the question of jurisdiction, and deciding it on the merits, or that they did not understand their duty to decide the case on defect of jurisdiction, if such was their opinion.

In Wilson and Trent vs. Butler and others, (3 Munf. 564,) the court of Appeals of Virginia, upon this question of jurisdiction, delivered their opinion in these words: "The court is of opinion, that although a party whose property is taken in execution to satisfy the debt of another, may proceed to recover that property, or damages for the taking and detaining thereof, in a court of law; and although it is competent to the sheriff, having doubts as to the title of the property taken in execution, to

demand from the creditor an indemnifying bond, pursuant to the act in such case made and provided, yet neither of these remedies are in exclusion of a proceeding in equity, having for its object the retention of the property in specie. Every agreement on which the jurisdiction of the courts of equity, to compel a performance of a contract in specie, is founded, is supposed to hold with equal force at least, in favour of retaining a subject of property, which another having no title thereto, claims to arrest and dispose of by means of an execution, rather than turn the rightful owner round to seek an uncertain and inadequate reparation in damages. On this ground, the court is of opinion, that the declared principle of the decree before us is erroneous."

In Osburn vs. the Bank of the United States (9 Wheat. 845,) the supreme court of the United States, sustained the jurisdiction of a court of equity to restore the money and notes which had been taken (wrongfully, as that court said,) under a distress for non-payment of the tax levied on the Bank. Without meaning to assent to the opinions expressed upon the other questions involved in that case, I am fully satisfied, that the question of the general jurisdiction of courts of equity to assure to the right owner his property against a wrongful taking under colour of law, was there properly settled. The principle upon which the jurisdiction is placed in that decision, is, "that a court of equity will always interpose, to prevent the transfer of a specific article, which, if transferred, will be lost to the owner. Thus the holder of negotiable securities, indorsed in the usual manner, if he has acquired them fraudulently, will be enjoined from negotiating them; because, if negotiated, the maker or indorser must pay them. Thus, too, a transfer of stock will be restrained in favor of a person having the real property in the article. In these cases the injured party would have his remedy at law; and the probability that this remedy would be adequate, is stronger in the cases put in the books, than in this, where the sum is so greatly beyond the capacity of an ordinary agent to pay. But it is the province of

a court of equity in such cases to arrest the injury, and prevent the wrong. The remedy is more beneficial and complete, than the law can give."

The injunction against committing waste, is founded on the same principle of assuring to the right owner the specific property: damages might be recovered for the waste, but will not restore the thing. This bill is not a suit to have satisfaction for a tresspass; but a suit for the specific thing; to have the very thing wrongfully taken; there are no damages asked for the trespass, that is waived as in detinue. The bill, in all such wrongful seizures by the sheriff, is for specific execution of the right of the complainant to have the thing, and to be protected in the use and enjoyment of his right. Fortified, as I am, by the former decisions of this court, and by the concurrent opinions of so many learned and able jurists, I cannot consent to destroy so useful a branch of the jurisdiction of courts of equity, one so important to the security of property. The idea that an action of detinue, trover, or trespass, gives adequate redress for loss of property wrongfully taken, is abandoned. The sense of every man tells him that a future recovery after delays incident to a suit at law, is not an adequate redress for the privation and injury sustained by wrongful abduction of property. Yet this redress by trespass, trover, or detinue, is the cause assigned in Kendrick vs. Arnold, and in Nesmieth vs. Bowler. The case of Watkins vs. Logan rests upon those former decisions. Now, the writ of replevin is assigned as the cause for denying the remedy by bill in equity. If the writ of replevin will lie, yet it is but little understood, and less used in this community, it is not exclusive of the remedy by bill in equity. The remedy by bill is more simple and less liable to mistake or abuse.

My opinion is, that the decree of the circuit court be affirmed; but by the opinion of the other judges of the court, it is to be reversed for want of jurisdiction.

*Triplett* for appellant; *Mayes* for appellee.