## CAUSIDERE v. BEERS.

### December, 1865.

One who wins from a clerk, by gaming, the money of his employer, is liable to the employer in an action for money had and received.

Where one receives the money of another, and has not the right conscientiously to retain it, the law implies privity, and a promise to repay.[*]

Mark Causidiere sued George W. Beers in the New York

[*] Otherwise if received under an adverse claim of right. 37 *N.Y.* 332; 41 *Id.* 450.

Causidiere *v.* Beers.

common pleas, to recover money of the plaintiff's, alleged to have been lost by one Eugene Delonne, a clerk in his employment, at a gambling table, of which the defendant was the proprietor.

The complaint alleged that on divers days between April 26 and July 3, 1857, one Eugene Delonne, a clerk of the plaintiff, unlawfully lost at play, and the defendant won at play and received from Delonne, certain bank notes or bills and moneys, the property of the plaintiff; and that Delonne never had or received from the defendant, and the defendant never gave him, any value or valuable consideration therefor. That the plaintiff demanded all such bank notes, bills and moneys from the defendant, who refused to deliver the same to him, but wrongfully retained the same. The answer denied all the allegations of the complaint. At the trial, the defendant moved to dismiss the complaint, upon the ground that to recover money won at play by any person no action could be maintained but by the loser, and that such action by the loser was founded solely on the statute against "betting and gaming." The motion was denied, and the defendant excepted.

The plaintiff then proved that the defendant kept a gambling house, 92 Prince-street, in the city of New York. That Delonne, a clerk in the employment of the plaintiff, was intrusted at different times with the money of the plaintiff in the transaction of his business, including, at one time, four hundred and seventy-six dollars to pay a note, with which money he played the game of faro with the defendant, at his house, between April 27 and July 2, 1857, and lost to the defendant in all amounting to the sum of five hundred and eighty-seven dollars. He played with the defendant, and generally the defendant was present, and heard it stated in the presence and hearing of the defendant that he was the proprietor and kept the house. It was also proved that before the commencement of the action, the money was demanded of the defendant in behalf of the plaintiff, and payment refused. The defendant offered no evidence, but at the close of the plaintiff's evidence renewed his motion to dismiss the complaint, which was again denied. Judgment was thereupon rendered for the plaintiff,

Causidiere *v.* Beers.

which was afterwards affirmed by the court at general term, and the defendant appealed to this court.

*James E. Beers,* for defendant, appellant;—Insisted that the action could only be sustained on the statute, citing Perkins *v.* Savage, 15 *Wend.* 412 ; Yates *v.* Foot, 12 *Johns.* 1 ; McKeon *v.* Caherty, 3 *Wend.* 495 ; Brown *v.* Harmon, 21 *Barb.* 510 ; 1 *N. Y.* (1 *Comst.*) 392 ; Schroeppell *v.* Corning, 2 *Id.* 132 ; 2 *R. S.* 4 ed. 72, § 9 ; 73, § 14. That gaming is not illegal at common law ; *Burn's Justice,* tit. Gaming ; 1 *Bouv. Inst.* 510.

*John H. Reynolds,* for plaintiff, respondent;—Insisted that independent of the statute the action lay ; citing Clark *v.* Johnson, *Lofft,* 756 ; Mason *v.* Waite, 17 *Mass.* 563 ; Burnham *v.* Fisher, 25 *Verm.* 514 ; Ruckman *v.* Pitcher, 20 *N. Y.* (6 *Smith*) 9 ; Meech *v.* Stoner, 19 *N. Y.* 26 ; *Story on Ag.* §§ 435–7. That the plaintiff, not being *in pari delicto,* might recover ; Meech *v.* Stoner, *above ; Story on Ag., above ;* Clark *v.* Shee, *Cowp.* 197 ; Taylor *v.* Plumer, 3 *Maule & S.* 562. That the action would lie on the statute ; Meech *v.* Stoner, and Ruckman *v.* Pitcher, *above.*

BY THE COURT.—BROWN, J. [After stating the facts.]— Meech *v.* Stoner, 19 *N. Y.* 26, determines that money lost in gaming is assignable as other choses in action, and the right to prosecute given to the losing party is not a mere personal privilege which is unavailable by any one to whom he may have transferred the claim. The principle upon which the decision rests is, that the transaction is utterly void, and the winner obtains thereby no title in himself to the money won ; but the inability of the loser to recover the money back is based upon another maxim of the common law, which withholds remedial process from the offending parties, and when both are equally guilty, the better condition is that of the defendant. The learned judge who delivered the opinion, thinks section 14 of the statute, which literally gives the right of action to the loser, if exercised within a given time, does not so much create a right of action as it removes an obstacle which the common law placed in the way of his recovery. He quotes in

support of his opinion, Turner v. Warren, 2 *Strange*, 1079, where it was held the action given by the statute of Anne was not in the nature of a penal action, because the defendant was debtor to the plaintiff. Also, Bones v. Booth, 2 *W. Blacks.* 1226, where it was observed, " the statute makes the winning ten pounds at any one time or sitting, a nullity, and therefore, gives the loser an action to recover back what still properly continues to be his own money." Also, Brandon v. Pate, 2 *H. Blacks.* 308, where the loser became bankrupt, and his assignees were allowed to recover back the money lost as a part of his estate. Had the money lost in the present case been the proper money of Delonne, the cases referred to show that the winner obtained no title as against the loser, or those claiming as his assignees or creditors, but the same would still have remained the money of the latter to be recovered in the action for money had and received.

It remains to consider what are the relations of the plaintiff to the defendant in respect of this money, and whether they are such as give him a right of action to recover back what was undoubtedly his own.

The plaintiff was not known to the defendant in the transac-. tion by which the money changed hands. He did not deal with the plaintiff, nor was he aware that the money which he won from Delonne was the money of the plaintiff until just before the commencement of the action. There was no actual privity between them. In order to maintain the common count for money had and received, however, it is not always necessary there should have been an express privity of contract between the plaintiff and the defendant. There need be no privity of contract except that which results from one man having another's money, which he has not a right, conscientiously, to retain. *Chit. on Cont.* 605, 5 ed. The defendant has obtained the plaintiff's money by a process ·condemned by law as illegal and unjust, and can have no conscientious or equitable claim to retain it. He parted with nothing when he received it, and should he restore it to the true owner, he is no worse off than he was before the transaction with Delonne. The most favorable point of view in which he can be regarded is that of one who has accidentally found the money of another,

which he is bound, upon the plainest rules of morality, to re-
store. This view is in conformity with the principle alluded
to in Pierce *v.* Crafts, 12 *Johns.* 90, where it is said : "It is not
true that the action for money had and received can only be
grounded on privity of contract. It lies against the finder of
money lost. It is the proper action to recover money obtained
by fraud and deceit." In Rapalje *v.* Emory, 2 *Dall.* 51, 54, it
is said that privity of contract is essential to maintain the ac-
tion for money had and received, with this qualification, "un-
less there has been *mala fides,* that is, an unjust receipt of the
money, or at least a receipt of it without a valuable considera-
tion." Mason *v.* Waite, 17 *Mass.* 563, was quite like the pres-
ent case. The plaintiff delivered to one Sargent, a carrier or
stage driver, between Gloucester and Boston, one hundred and
fifty dollars in bank-bills to carry to Boston, put up by them-
selves in a separate parcel. The defendant and another kept a
faro table at the latter place, where the money, together with
the money of others, was lost to the defendant and the other
owner of the table. The jury found a verdict for the plaintiff,
which the court refused to set aside, at the same time saying :
"As to any want of privity or any implied promise, the law
seems to be that where one receives the money of another and
has not a right conscientiously to retain it, the law implies a
promise that he will pay it over." In Calland *v.* Loyd, 6 *Mees.
& W.* 26, the plaintiff gave his wife a sum of money to take
care of for him. Without the plaintiff's knowledge she took
part of the money, a fifty pound Bank of England note, and
deposited it in the defendants' hands in the name of her infant
son by a former marriage, taking a receipt in his name, bearing
interest. When the plaintiff discovered the fact, he demanded
the money from the defendants, which they refused to pay, and
he then brought this action to recover it. The defendants
contended that having received the money upon a contract
with another, the plaintiff could not recover it as money re-
ceived for his use. The judge thought otherwise, and a verdict
was found for the plaintiff, which the court were afterward
moved to set aside and refused, holding that there was no con-
tract with another person to bind the defendants; that the
wife was not the agent of the husband, nor had she any right.

to make a deposit for the infant who could give her no author-
ity. These authorities seem to me to be decisive of the rule,
that where one receives the money of another, and has not the
right conscientiously to retain it, a privity between the true
owner and the receiver will be implied as well as a promise to
repay it.

The judgment of the common pleas should be affirmed.

All the judges concurred, except POTTER, J., absent.

Judgment affirmed, with costs, and ten per cent. damages.