### BOTTS v. MERCANTILE BANK OF MEMPHIS.

(Supreme Court, Appellate Division, First Department. December 30, 1915.)

1. GAMING ⬚2—FUTURES—CONFLICT OF LAWS.

Where, in an action by the assignee of a depositor in a bank to recover the money deposited, defendant bank's counterclaim set up a cause of action by the bank against plaintiff's assignor under a quasi penal gaming statute of Tennessee, which invalidated contracts for future delivery of merchandise where either party intended not to carry out the contract by receipt or delivery, regardless of the intention of the other party, there being no corresponding statute in New York, the counterclaim must fail, since such statute is against the public policy of New York on the subject of contracts for future delivery of merchandise.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. § 2; Dec. Dig. ⬚2.]

2. GAMING ⬚12—FUTURES—NEW YORK RULE.

The rule in New York as to contracts for future delivery of merchandise is that the contract is not invalid for the uncommunicated and unshared intention of one party not to deliver or receive, but only when such intention is shared by both parties as an element of the contract.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. § 22; Dec. Dig. ⬚12.]

**3.** GAMING &#10137;48—FUTURES—COUNTERCLAIM—ESSENTIAL ALLEGATIONS.

A counterclaim, seeking to urge against plaintiff's demand a loss sustained by defendant bank through the illegal dealing in futures between its president and plaintiff's assignor, which alleged that such parties were "engaged in certain transactions with reference to" the purchase and sale of futures, was bad for failure to allege directly that they were engaged in buying and selling futures to each other as opposing parties in contracts for sale and purchase, since, as alleged, the transactions were not necessarily illegal contracts for future delivery of merchandise.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. §§ 96–99; Dec. Dig. &#10137;48.]

**4.** GAMING &#10137;48—FUTURES—COUNTERCLAIM—SUFFICIENCY.

Defendant's second counterclaim on the same subject, which further alleged knowledge on the part of plaintiff's assignor of the use of defendant's money by its president in settling such accounts with plaintiff's assignor, was sufficient because of such additional allegation.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. §§ 96–99; Dec. Dig. &#10137;48.]

Smith and McLaughlin, JJ., dissenting in part.

Appeal from Special Term, New York County.

Action by John C. Botts against the Mercantile Bank of Memphis. From an order overruling plaintiff's demurrer to defendant's counterclaim, plaintiff appeals. Order modified.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and SMITH, JJ.

David R. Miller, of New York City, for appellant.
Archibald R. Watson, of New York City, for respondent.

SCOTT, J. [1, 2] The action is brought by the assignee of one Madison Foster to recover certain sums deposited in defendant bank by said Foster. The answer, in addition to denying the assignment of the cause of action to plaintiff, sets up two counterclaims, to which plaintiff demurs. By the order appealed from both counterclaims are sustained.

The first counterclaim attempts to set up a cause of action in favor of defendant and against plaintiff's assignor, based upon a statute of Tennessee. This statute (Shannon's Code) is thus alleged in the answer:

"Sec. 3166. *Gaming contracts.*—Any sale, contract, or agreement for the sale of bonds, stocks, grain, cotton, or other produce, property, commodity, article, or thing, for future delivery, where either of the contracting parties, buyer or seller, is dealing simply for the margin, or in the prospective rise or fall in the price of the article or thing sold, and where either of the said contracting parties have had no intention or purpose of making actual delivery or receiving the property or thing in specie, shall be deemed, and is hereby declared gaming. (1883, ch. 251, § 1.)"

"Sec. 3161. Any person who has paid any money, or delivered anything of value, lost upon any game or wager, may recover such money, thing, or its value, by action commenced within ninety days from the time of such payment or delivery.

"Sec. 3162. Any other person may, after the expiration of the ninety days, and within twelve months thereafter, recover the amount of such money, thing, or  *  *  *  value, by action for the use of the wife; or, if no wife,

&#10137;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the child or children; and if no child or children, the next of kin of the loser.

"Sec. 3163. And after the expiration of the time prescribed in the last section, and within twelve months thereafter, any creditor of such losing party may, by garnishment or action, recover the amount of such money, thing, or its value, in satisfaction of so much of his debt."

This statute is distinctly opposed to the public policy of this state on the question of buying and selling merchandise for future delivery. The rule in this state, as at common law, is that such a contract is not invalid because it is the intention of one party not to deliver or receive according to the terms of the contract, unless such intention was shared in or communicated to the other party, so that it became a part of the understanding between the parties at the time the contract was entered into. Bibb v. Allen, 149 U. S. 481, 13 Sup. Ct. 950, 37 L. Ed. 819; Springs v. James, 137 App. Div. 110, 121 N. Y. Supp. 1054, affirmed 202 N. Y. 603, 96 N. E. 1131. Under the Tennessee statute, relied upon by defendant, such a contract is unlawful if *either* party to it entertained an intention not to carry it out by an actual receipt or delivery of merchandise, even although that intention was not shared by or communicated to the other party to the contract. McGrew v. City Produce Exchange, 85 Tenn. 572, 4 S. W. 38, 4 Am. St. Rep. 771. The Tennessee statute is penal, or at least quasi penal, in its character, and since we have no corresponding statute in this state our courts will not enforce it. Marshall v. Sherman, 148 N. Y. 9, 42 N. E. 419, 34 L. R. A. 757, 51 Am. St. Rep. 654; Hutchinson v. Ward, 192 N. Y. 375, 85 N. E. 390, 127 Am. St. Rep. 909; Knickerbocker Trust Co. v. Iselin, 185 N. Y. 54, 77 N. E. 877, 113 Am. St. Rep. 863. In so far, therefore, as the first counterclaim rests upon the Tennessee statute, we are of opinion that it cannot be sustained.

[3, 4] It is claimed, however, that irrespective of the statute the counterclaim sufficiently states a cause of action in favor of defendant. Briefly summarized, its allegations are as follows: That the president of defendant bank was one Raine, and that he and plaintiff's assignor (Foster) engaged in certain transactions "with reference to the purchase and sale of alleged contracts for the future delivery of cotton, otherwise known as cotton futures"; that as the result of said transactions with said Foster the said Raine sustained large financial losses, which were paid at various times during the years 1912, 1913, and 1915 by said Raine to said Foster "out of funds belonging to the defendant and unlawfully appropriated by the said Raine for the purposes aforesaid." It is further alleged:

"That in all of said transactions the said Foster and the said Raine dealt simply in the prospective rise or fall in the price of said cotton, and with no intention or purpose of making actual delivery of or receiving the said cotton, and that no actual delivery of the said cotton was ever made by the said Raine at any time."

If these allegations can be fairly construed as stating that Raine agreed to sell to or buy from Foster cotton to be delivered in the future, or vice versa, and that neither party at any time ever intended to make actual delivery or receipt, I should agree with my brother SMITH that the counterclaim set forth an invalid gambling contract,

which would fall within the purview of our own statute, and would justify a recovery or offset by defendant.  See sections 994 and 995, Penal Law; Causidiere v. Beers, 1 Abb. Dec. 333.

I do not, however, so read the counterclaim.  The pleader, either by inadvertence or by intention (it is difficult to say which), has avoided alleging in plain language that Raine and Foster were engaged in buying and selling cotton futures to each other as opposing parties in contracts for sale and purchase.  The allegation is that they were "engaged in certain transactions *with reference* to the purchase and sale of alleged contracts for the future delivery of cotton."  This may mean many things besides the relation of purchaser and seller.  The pleader should plainly and without indirection allege just what the relation was between Raine and Foster with reference to the dealing in cotton futures.  As the pleading is drawn, Foster may or may not be liable to repay the money said to have been lost by Raine, at common law or even under the Tennessee statute.

The second counterclaim alleges knowledge on Foster's part of the diversion of the defendant's money by Raine, and is for that reason sufficient.

The order appealed from is therefore so modified as to sustain the demurrer to the first counterclaim, and to overrule the demurrer to the second counterclaim, without costs to either party in this court, and with leave to the defendant to amend its answer within 20 days.  Settle order on notice.

INGRAHAM, P. J., and CLARKE, J., concur.

SMITH, J. (dissenting in part).  I agree with the court that the second counterclaim contains a valid set-off to the plaintiff's claim.  Raine appropriated the moneys of the bank and gave them to Foster, who had knowledge of the fact that the moneys so received by him were the property of the bank.  This clearly raises an implied promise on his part to return the same, which implied promise is made the basis of the second counterclaim.

I am also convinced that the first counterclaim is sufficient as an offset to plaintiff's claim.  This counterclaim alleges that these moneys of the bank were given by Raine to the plaintiff's assignor in furtherance of gambling transactions between Raine and Foster.

In Causidiere v. Beers, 1 Abb. Dec. 333, the headnote reads:

"One who wins from a clerk, by gaming, the money of his employer, is liable to the employer in an action for money had and received.

"Where one receives the money of another, and has not the right conscientiously to retain it, the law implies privity, and a promise to repay."

The opinion in part reads:

"The plaintiff was not known to the defendant in the transaction by which the money changed hands.  He did not deal with the plaintiff, nor was he aware that the money which he won from Delonne was the money of the plaintiff until just before the commencement of the action.  There was no actual privity between them.  In order to maintain the common count for money had and received, however, it is not always necessary there should have been an express privity of contract between the plaintiff and the defendant.

There need be no privity of contract, except that which results from one man having another's money, which he has not a right, conscientiously, to retain."

This rule of law, asserted by the Court of Appeals and never questioned, controls this case, if I am right in my premise that the money was lost by Raine to Foster in a gambling scheme. That premise is questioned in two particulars: First, it is asserted that the counterclaim in question does not allege a gambling scheme. It alleges that Foster and Raine, the president of the bank, engaged in certain transactions "with reference to the purchase and sale of alleged contracts for the future delivery of cotton, otherwise known as cotton futures." It further alleges, in paragraph fifth, that all of said transactions "dealt simply in the prospective rise and fall in the price of the said cotton, and with no intention or purpose of making actual delivery of or receiving the said cotton, and that no actual delivery of the said cotton was ever made by the said Foster or received by the said Raine at any time."

Under these allegations Foster and Raine were wagering upon the advance or fall in price of cotton; no other interpretation is possible. This contract, then, is squarely within our statute, and made illegal thereby.

It is further asserted that the counterclaim alleges a joint transaction wherein Foster and Raine were acting together in gambling with some third party unnamed. If this were true, it is difficult to see what better right Foster could have with the defendant's money transferred by Raine. Both are engaged in the illegal transaction in which Raine has transferred the bank's money, and within the authorities cited the law implies a promise for its return. But such is not the fair interpretation of the pleading. The counterclaim asserts that Foster engaged in these gambling transactions with Raine with reference to the purchase and sale of cotton futures, and that in those transactions he paid to Foster and received from him various sums set forth in Schedule "A" annexed to the answer. It is further alleged that, as the result of said transactions with said Foster, the said Raine sustained large financial losses, not that the said Raine and Foster sustained large financial losses. Further, in the fifth paragraph of the answer, as before quoted, it is stated that Foster and Raine dealt simply in the prospective rise or fall in the price of cotton, with no intention of making actual delivery, "and that no actual delivery of the said cotton was ever made by the said Foster or received by the said Raine at any time." If, as is insisted, a joint enterprise was alleged wherein Raine and Foster together gambled with some third party, the allegation that no actual delivery was ever made *by said Foster* or received *by said Raine* is entirely without significance. · Undoubtedly the facts might have been more plainly alleged, but enough is alleged in my judgment from which a fair inference can be drawn that Foster and Raine were gambling with each other, and that the moneys of the defendant paid by Raine to Foster in said gambling transactions were illegally paid, and from its payment an implied promise arises to return the same directly, within Causidiere v. Beers, supra.

In this view of the case it is unnecessary to consider the question whether the plaintiff, by suing in this state, can have the benefit of an offset which would be clearly valid in the state of Tennessee, where both parties resided and all the transactions occurred.

McLAUGHLIN, J., concurs.